1  THERESE Y. CANNATA (SBN 88032)
   CAROLYN A. JOHNSTON (SBN 121571)
2  RACHEL L. KENT (SBN 269992)
   CANNATA, CHING & O'TOOLE LLP
3  100 Pine Street, Suite 1775
   San Francisco, CA 94111
4  Telephone: (415) 409-8900
   Facsimile: (415) 409-8904
5  Email: tcannata@ccolaw.com

6  Attorneys for Plaintiffs
   ALEXANDER GRAHAM-SULT and DAVID GRAHAM

7

8                       UNITED STATES DISTRICT COURT

9                      NORTHERN DISTRICT OF CALIFORNIA

10                              OAKLAND DIVISION

11

12  ALEXANDER GRAHAM-SULT, an              CASE NO. CV 104877 CW
    individual, and DAVID GRAHAM, an
13  individual,                            **PLAINTIFFS' ADMINISTRATIVE
                                           MOTION TO SUPPLEMENT THE
14         Plaintiffs,                     RECORD**

15      v.

16  NICHOLAS P. CLAINOS, an individual,    Complaint Filed: October 27, 2010
    RICHARD L. GREENE, an individual,
17  LINDA McCALL, an individual, GREENE
    RADOVSKY MALONEY SHARE &
18  HENNIGH LLP, a limited liability
    partnership, BILL GRAHAM ARCHIVES
19  LLC, d/b/a WOLFGANG'S VAULT, a
    limited liability company, NORTON LLC, a
20  limited liability company, and WILLIAM E.
    SAGAN, an individual,
21
           Defendants.
22  _____/

23

24

25

26

27

28

**INTRODUCTION**

Pursuant to Civil L.R. 7-3(d) and 7-11 and this Court's Order dated April 12, 2011, plaintiffs Alexander Graham-Sult and David Graham move this Court for an order permitting them to supplement the record in this case by filing the declarations of Philip Feldman and Janet Lehua, which are attached hereto as Exhibits 1 and 2.[1]

This is a case about the concealment and conversion of certain very valuable assets by fiduciary (Mr. Clainos), who was aided and abetted by his attorneys acting for the Estate and the company ("BGE"). Among the defenses presented by the fiduciary-defendant and the attorney defendants is that plaintiffs have not timely brought these claims. In that vein, these defendants have argued that plaintiffs' attorney, Mr. Feldman, possibly received in 1997 a document – the 1995 Assignment – evidencing the concealment and conversion, and that plaintiffs therefore have the burden to present evidence from Mr. Feldman to the contrary.[2] Plaintiffs noted at the hearing that Mr. Feldman could and would provide a declaration that he did not receive the 1995 Assignment until after it was discovered by plaintiffs in 2009, and that he had made a diligent search of his files to confirm that the document was not there. Plaintiffs therefore present the declarations of Mr. Feldman and Ms. Lehua (his assistant), and ask this Court to grant them leave to file these declarations in support of their opposition to the pending special motions to strike. In the alternative, plaintiffs ask this court to consider these declarations as a proffer of evidence that could and would be presented if plaintiffs were permitted to amend their complaint.

**A.     Submission of These Declarations Will Serve the Interests of Justice and Causes No Prejudice to Defendants**

Supplementing the record to allow the Court to consider these declarations will serve the purpose of this Court's rules, which is "to secure the just, speedy, and inexpensive determination

---

[1]  Mr. Feldman signed a declaration on Monday, April 11, 2011. Plaintiffs were not given leave to file it. Mr. Feldman has since revised his declaration, the document now presented is entitled "Amended Declaration of Philip Feldman."

[2]  If the 1995 Assignment was "probate related" as defendants have contended, then one might ask why defendants claim the disclosure was first made in 1997 in a transaction wholly unrelated to the probate proceedings.

720232 pldg mot supp record FINAl.wpd

**1**
**PLAINTIFFS' MOTION TO SUPPLEMENT RECORD**

of every action and proceeding." Fed. R. Civ. P. 1; Civ. L.R. 1-2(b); *Cruz v. Dollar Tree Stores, Inc.*, No. 07-2050 SC, 2011 WL 843956[*] 3 (N.D. Cal. March 8, 2011) (submission of supplemental declarations allowed "in the interest of fairness"); *Banga v. Experian Information Solutions*, No. C-08-4147SBA, 2009 WL 1702052*2 (N.D. Cal. June 17, 2009) (submission of supplemental declaration considered "in the interest of justice.").

These declarations are directly relevant to the statute of limitations defense asserted by defendants in this case, and defendants will not be prejudiced by this submission. Mr. Feldman's and Ms. Lehua's declarations *confirm* the evidence submitted in plaintiffs' opposition papers and reviewed at oral argument – that plaintiffs did not directly or through others (*i.e.* their parents or attorneys) receive the 1995 Assignment.[3] Plaintiffs also pointed out that defendants had not provided any competent evidence – such as testimony by a person with actual knowledge that Mr. Feldman had received the Assignment, or a transmittal memo, cover letter or fax cover sheet showing receipt by Mr. Feldman of the Assignment – to which defendants responded, albeit with innuendos and inadmissible hearsay. Docket No. 45 at 10:20-28; Docket No. 55 at 27:1-5; Docket No. 63 at 4:6-10; and Docket No. 73 (plaintiffs' evidentiary objections) at 4:17-5:7.

Perhaps recognizing that their "evidence" was problematic, defendants argued that plaintiffs' evidence was insufficient because Mr. Feldman did not *also* confirm, for example, that he had never seen or received the 1995 Assignment or Schedule 3.18 of the SFX agreement. Docket No. 62 at 15:21-26; Docket No. 69 at 17:26-27. Mr. Feldman and Ms. Lehua now provide what defendants claim was missing. Defendants should not be able to have it both ways: chide plaintiffs for failing to present such evidence and suggest that this lack of evidence proves their argument, and then be permitted to block the presentation of that very evidence.

---

[3] Plaintiffs and their parents provided statements under oath that they were completely unaware, until 2009, of the 1995 Assignment, or the poster copyrights and "The Fillmore" trademark registered in Bill Graham's name. Docket Nos. 49-53. Plaintiffs' counsel, Ms. Cannata, provided a declaration confirming that her search of plaintiffs' records and of files maintained by Mr. Feldman's firm confirmed that the 1995 Assignment was not there. Docket No. 58 at 2:14-18.

720232 pldg mot supp record FINAl.wpd

**2**
**PLAINTIFFS' MOTION TO SUPPLEMENT RECORD**

### B. The Evidence Presented in These Declarations Augments Plaintiffs' Evidence, Which Already Meets the Minimal Merit Standard

In deciding the second prong of an anti-SLAPP motion, the court must not "weigh the credibility or comparative strength of competing evidence," but rather "accept as true all evidence favorable to plaintiffs and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law." *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 741, n.10 (2003); *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 699-700 (2007); *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002). Here, plaintiffs have offered admissible evidence from multiple sources that the 1995 Assignment was concealed from them until 2009. Defendants have countered that absent a declaration to the contrary from Mr. Feldman, this Court could infer what defendants could not otherwise prove: that Mr. Feldman (purportedly) received the 1995 Assignment. Docket No. 69 at 17:26-27; Docket No. 62 at 15:21-26.

To be clear, defendants have not presented admissible evidence that they disclosed or provided the 1995 Assignment to plaintiffs or anyone acting on their behalf. Instead, defendants cobble together inferences that do not individually or collectively prove anything. For example, Mr. Greene stated in his initial declaration that "[t]he Stock Purchase Agreement for the SFX Acquisition . . . *was provided to* Feldman." Docket 27-1 at 10:3-5 (emphasis added). By failing to identify who sent it, or when it was sent, Mr. Greene demonstrates his lack of personal knowledge and thus the inadmissibility of the evidence. Mr. Clainos included in his declaration a hearsay claim that Mr. Greene had declared that "he did indeed send the SFX documents to Mr. Feldman." Docket No. 63 at 4:9-10. That's not what Mr. Greene stated in his declaration, and Mr. Clainos's statement is inadmissible hearsay. Also missing from defendants' submission is a definitive statement that the documents ("the SFX documents" or "[t]he Stock Purchase Agreement") allegedly sent or provided to Mr. Feldman in fact contained either Schedule 3.18 or the 1995 Assignment.

Still, defendants persist in the argument that the 1995 Assignment was somehow revealed to Mr. Feldman in connection with the sale of BGE to SFX. Docket No. 27 at 11:27-12:2 and

23:24-25; Docket No. 33 at 20:8-21. Mr. Feldman's declaration puts to rest that argument once and for all. Mr. Feldman was never given the 1995 Assignment, Schedule 3.18, or any other document that could have alerted him to the fact that Mr. Clainos, aided and urged by his counsel, had assigned to BGE property belonging to the Estate (*i.e.* the poster copyrights and trademark Bill Graham had registered in his own name during the last year of his life).

Defendants also argue that notwithstanding their representations to plaintiffs and their counsel about the ownership of certain assets, it was incumbent on plaintiffs to investigate and expose the concealment by their fiduciary and his counsel. Thus, defendants contend that the inclusion of "© Bill Graham" on early concert posters as well as references to intellectual property in other documents provided to Mr. Feldman imposed a legal duty on plaintiffs and their counsel to inquire further about poster copyrights and trademarks. As Mr. Feldman explains in his declaration, he accepted the representations of the executor's counsel concerning the ownership status of Estate assets, including the Archives. Feldman Decl. ¶5. Mr. Feldman had no reason nor duty to do the job of the executor and his counsel. Docket 47 at 8:4-22.

Among the executor's most important obligations is the duty is to marshal and report on the assets of the estate. This includes the preparation of complete and accurate inventories to advise the heirs and beneficiaries of all assets and their value in the decedent's probate estate. *In re Estate of Fain*, 75 Cal.App. 973, 991-992 (1999). Similarly, one of the first duties of an attorney hired by an executor to assist in the settling of an estate is to determine what property and property interests decedent owned at death, how title was held, where the assets are located, and so forth. *Butler v. State Bar* (1986) 42 C3d 323, 328. The status of title of property is often a critical component of this analysis, and Mr. Greene clearly embraced that duty. He has stated repeatedly under oath that he personally investigated the right and title to the Archives, including the poster copyrights and "The Fillmore" trademark, and determined that they were owned by BGE. Docket No. 70 at 2:7-14 ("As I have told everyone who will listen . . ."); *see also* Docket No. 70-2 (indicating that Mr. Greene was well aware of the copyrights registered in Mr. Graham's name as of at least December 9, 1991).

720232 pldg mot supp record FINAl.wpd

**4**
**PLAINTIFFS' MOTION TO SUPPLEMENT RECORD**

Defendants seek here to avoid the rule a fiduciary has an affirmative duty to disclose all material facts. The failure to do so is concealment. *See, Strasberg v. Odyssey*, 51 Cal.App.4th 906, 915-917. Defendant aided and abetted the executor in concealing facts that he knew were material. For example, Mr. Greene declares in his reply papers that he learned on December 9, 1991 that certain poster copyrights were registered in Bill Graham's name (Docket No. 70 at 2:7-14; Docket No. 70-2), but he reports no such thing to Mr. Feldman in a letter sent the very next day, noting merely in general terms that the archives were owned by the companies. Feldman Decl. ¶ 5 and Ex. C.

Mr. Feldman's declaration closes the circle of evidence, demonstrating that Mr. Clainos and the attorney-defendants withheld material facts from plaintiffs *and their counsel*, for the apparent purpose of discouraging investigation and giving defendants cover to complete their acts of conversion.

## CONCLUSION

Defendants can offer no reasonable objection to the inclusion of Mr. Feldman's and Ms. Lehua's declarations in the record at this procedural juncture. In future discovery, motion practice, and at trial, defendants will have the opportunity to develop their statute of limitations defense. Defendants will no doubt inquire about what Mr. Feldman knew, when he knew it, and whether he was entitled to rely on Clainos, Greene and McCall to disclose the 1995 Assignment and the fact that the decedent had registered intellectual property in his own name shortly before his untimely death. However, at this stage of the proceedings, the two declarations offered here assist in meeting plaintiffs' burden under the "minimal merit" standard of demonstrating that defendants are not entitled to judgment in their favor based on their statute of limitations defense. Mr. Feldman's declaration is credible, admissible evidence of plaintiffs' contention that they were not on inquiry notice of the 1995 Assignment until 2009. For the foregoing reasons, this motion should be granted.

// //

// //

// //

720232 pldg mot supp record FINAl.wpd

1  // //

2  // //

3  Dated: April 18, 2011                    CANNATA, CHING & O'TOOLE LLP

5  /s/ Therese Y. Cannata
   THERESE Y. CANNATA
   Attorneys for Plaintiffs ALEXANDER
   GRAHAM-SULT, an individual, and
   DAVID GRAHAM, an individual