

CANNATA,
CHING &
O'TOOLE LLP
Attorneys at Law

Therese Y. Cannata
tcannata@ccolaw.com

April 18, 2011

Honorable Claudia Wilken
Unite States District Court
Courtroom 2
1301 Clay Street, Suite 400 S
Oakland, California  94612-5212

      Re:    *Graham-Sult, et al v. Clainos, et al.*
            *Case No. CV 104877 - CW*

Dear Judge Wilken:

     Pursuant to this Court's April 12, 2011 Order (Docket No. 84), we submit this letter brief in response to the letter brief Jerome B. Falk e-filed on April 9, 2011 on behalf of the attorney-defendants (Docket No. 78).

     Counsel for the attorney-defendants (hereinafter "Counsel") makes three basic assertions: (1) the Court should not should not allow plaintiffs to amend the Complaint; (2) plaintiffs have provided no evidence that the attorney defendants engaged in fraud or conversion; and (3) that plaintiffs' claims against the attorney defendants are barred by section 340.6 of the California Code of Civil Procedure.  We respectfully disagree with each point for the reasons set forth below.

    **1.**    **If The Court Is Not Prepared to Deny the Attorney Defendants' Special Motion to Strike the Complaint, the Court Should Permit Plaintiffs to Amend the Complaint**

     For the reasons set forth in plaintiffs' Memorandum of Points and Authorities filed on March 8, 2011 (Docket No. 45), the Court should deny the attorney defendants' special motion to strike.  However, if the Court concludes that this case arises from constitutionally protected activity, and concludes that plaintiffs did not conclusively meet the "minimal merit" standard as against the attorney defendants, the Court should permit plaintiffs to address those concerns through the filing of an Amended Complaint.

     Counsel does not and cannot argue that this Court lacks the power to grant plaintiffs leave to amend the Complaint.  The "policy of allowing amendments to be made at any time during the litigation," per Federal Rule of Civil Procedure, Rule 15(a), trumps California's anti-SLAPP law.  6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY

Hon. Claudia Wilken
April 18, 2011
Page 2

KANE, & RICHARD L. MARCUS, FEDERAL PRACTICE & PROCEDURE §1488 (3d edition 1998); *Verizon Delaware, Inc. v. Covad Communications Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) ("granting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment.").

Counsel makes much of the fact that plaintiffs did not seek leave to amend the Complaint, but cites to no rule requiring plaintiffs to request leave to do so.[1] There is no such rule. In fact, the general rule is that courts should allow plaintiffs to amend their complaint at any time. 6 WRIGHT *et al, supra*, §1485 ("Rule 15(a) does not set forth any specific procedure for obtaining leave to amend") and §1486 ("Rule 15(a) gives the court extensive discretion to decide whether to grant leave to amend after the time for amendment as a matter of course has passed"). The exception to the general rule allowing amendment – where the proposed amendment has been delayed and the party opposing amendment has been prejudiced by that delay – is obviously not relevant here, since no discovery has taken place, and the Court has not even ruled on defendants motion to strike and dismiss the Complaint. 6 WRIGHT *et al, supra,*. §§1487-88.

Counsel next argue that their special motion to strike is akin to a motion for summary judgment (Docket No. 78 at 1-3), but that analogy doesn't help defendants because plaintiffs have had no opportunity to take discovery. Federal courts have consistently held that California anti-SLAPP statute's prohibitions on amendment of pleadings and restrictions on discovery must give way to Rules 15(a) and 56(f) of the Federal Rules of Civil Procedure. *Metabolife v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001); *Brown v. Electronic Arts*, 722 F. Supp. 2d 1148, 1156 (C.D. Cal. 2010); *Rogers v. Home Shopping Network*, 57 F. Supp. 2d 973 (C.D. Cal. 1999); *Aeroplate Corp. v. Arch Insurance*, No. F 06-1099 AWI SMS, 2006 WL 3257487*6-7 (E.D. Cal. Nov. 9, 2006) . Counsel has offered no authority to the contrary.

The policy under the federal rules favoring liberal amendment and discovery applies to this case. Plaintiffs respectfully request that the Court allow plaintiffs to amend their Complaint and/or to take limited discovery before deciding the question of whether this case should be dismissed for lack of evidence under the "minimal merit" standard.

---

[1] Counsel attempts without success to distinguish *Verizon*, contending that "unlike the plaintiffs in *Verizon* – these Plaintiffs made no request for leave to amend in their briefing or prior to the hearing (or, for that matter, at the hearing)." Docket No. 78 at 1-2. There was no request in *Verizon* to amend prior to or at the hearing on the motion. To the contrary, it appears that in *Verizon*, the motion to amend was filed after judgment. *Id.* at 1090.

2. **The Record Before the Court Contains Ample Evidence That the Attorney Defendants Engaged in Fraud, Concealment, and Conversion**

Counsel engages in wishful thinking when he contends that "plaintiffs have produced literally *no* evidence" of the attorney defendants' fraud, concealment, subornation of perjury and conversion. In fact, there is substantial evidence in the record of the attorney defendants' knowing participation in fraud, conversion, concealment and subornation of perjury, that includes the following:

- During the last year of Bill Graham's life, the defendant attorneys were providing tax planning advice to Bill Graham regarding his individual – not corporate – tax liability, through a charitable donation of Mr. Graham's rock memorabilia to the Oakland Museum. Mr. Greene and his partners referred unambiguously in several writings to the fact that the Archives were owned by Bill Graham as distinct from the companies. *See, e.g.,* Docket No. 47 at 3:6 - 5:9, 27, 47, 53 and 57. Fully aware that Bill Graham regarded the Archives as his own personal property – not the property of the corporation – Mr. Greene sent a letter on December 10, 1991 to plaintiffs' counsel telling him that the archives belonged to the company, and not to Bill Graham personally. Docket No. 47-1 at 86.

- While the estate was being settled, the attorney defendants prepared and filed inventories, signed under penalty of perjury, which purported to list all assets of Bill Graham's Estate. These documents served to conceal from the heirs, including plaintiffs, the existence of hundreds of poster copyrights and "The Fillmore" trademark registered in Bill Graham's name. The significance of this is marked when considering Mr. Greene's supplemental declaration, Exhibit S-B, in which he confirms that he learned, during his meeting with Mr. Welkom and Mr. Pompili on December 9, 1991, about the existence of the poster copyrights registered in Bill Graham's individual name. Docket No. 70-2. The inventories were filed after December 9, 1991. Docket No. 47-1 at 74-75; Docket No. 47-4 at 37-38.

- The attorney defendants *hid the asset itself* from plaintiffs and their counsel, failing to disclose that when Bill Graham died the Fillmore trademark and hundreds of poster copyrights were registered in Bill Graham's name. *See* Docket Nos. 48-53. The attorney defendants have never contended that they notified plaintiffs or their counsel about the copyrights or trademark registered in Bill Graham's name.

- After the August 8, 1995 order modifying the final distribution of the Estate, to ensure that the Bill Graham Enterprises, Inc. ("BGE") would be able to exploit the copyrights and trademark then registered to Bill Graham, the attorney defendants

      prepared an Assignment on August 31, 1995 – which was backdated to August 1, 1995 (before the date of the final distribution of the Estate) – purporting to assign that intellectual property to the Clainos controlled company. Clainos Dec. ¶ 4 (Docket No. 34 at 2:24-25); Exhibit O to Greene Dec. (Doc. 27-7 at 29-30.)

- The attorney defendants never disclosed this Assignment to plaintiffs or their counsel – in 1995 when it was prepared, two years later when it was disclosed to purchasers of BGE, or anytime thereafter.[2] Neither the Assignment, nor any document mentioning the Assignment, has been found in the files of plaintiffs, their parents, or their attorneys. Docket Nos. 49-53.

    Counsel has made much of the fact that plaintiffs have focused on the intellectual property, and not on the scrapbooks and poster sets, in opposing the four motions filed by the defendants in this case. First, this is not accurate as there is ample evidence in the record concerning three of the four converted assets (*i.e.* the poster copyrights, "The Fillmore" trademark, and the scrapbooks). *See* Docket Nos. 49 and 50. Second, counsel's contention is legally irrelevant. Under the "minimal merit" standard, plaintiffs are not required to demonstrate all the different ways in which the defendants stole from them. The evidence of the attorney defendants' participation in the conversion of the intellectual property is sufficient to demonstrate that defendants are not entitled to judgment in their favor as a matter of law. *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 741, n.10 (2003); *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 699-700 (2007); *see also Grewal, supra*; *PrediWave Corp. v. Simpson Thatcher & Bartlett LLP*, 179 Cal. App. 4th 1204, 1220 (2009).

### 3. Plaintiffs' Claims Against the Attorney Defendants Are All Based On Actual Fraud and Conversion, and Are Not Subject to California Code of Civil Procedure 340.6

    The attorney defendants have nothing new to say about the statute of limitations. Defendants concede that section 340.6 does not apply to actions against attorneys based on actual fraud. Plaintiffs' claims against the attorney defendants in this action arise from the attorneys' intentional misconduct sounding in fraud. *See, e.g.,* Complaint ¶¶ 41-44 (Docket No. 1 at 14:24-16:1.) Plaintiffs have presented admissible evidence that the attorney

---

[2]    The attorney defendants contend, but have no admissible evidence to prove, that the Assignment was perhaps revealed to plaintiffs by sending their counsel the SFX Sales Agreement (or some portion thereof). In the interest of brevity, we refer this court to plaintiffs' Administrative Motion for Leave to Supplement the Record, filed concurrently with this letter brief.

Hon. Claudia Wilken
April 18, 2011
Page 5

defendants made intentional misrepresentations to plaintiffs' counsel, and actively assisted the fiduciary, Mr. Clainos, in converting property owned by the Estate for the benefit of a company in which Mr. Clainos had just acquired a substantial ownership interest. There is also significant evidence in the record that the attorney defendants knowingly concealed from plaintiffs and their counsel the existence of the assets (*i.e.* poster copyrights and a trademark registered in Bill Graham's individual name at the time of his death) because they admit knowledge of this fact as early as December 1991 (Docket No. 70 at 2:7-14 ; Docket No. 70-2), but do not list it on the various inventories filed with the probate court under penalty of perjury in 1992, 1993, 1994 and 1995. *See, e.g.,* Docket No. 47-1 at 74-75; Docket No. 47-4 at 37-38.

The attorney defendants argue that they owed no duty of disclosure because they were not plaintiffs' lawyers, but that misses the point. Plaintiffs do not, and never did, contend that the attorney defendants owed plaintiffs an affirmative duty of disclosure. The attorney defendants did, however, just like any other person, have a duty to tell the truth once they speak. They also had a duty not to help the fiduciary, Mr. Clainos, conceal and convert assets of the Estate. Defendants' incomplete and misleading statements about the ownership status of Estate assets, together with their preparation of a back-dated assignment of Estate assets to BGE, enabled Mr. Clainos to convert the estate's assets. No authority cited by the attorney defendants – including *Vafi v. McCloskey*, No. B223237, 2011 WL 989013 (Cal. Ct. App. Mar. 22, 2011) – suggests that California's shorter statute of limitations for attorneys applies where, as here, there is evidence of actual fraud and conversion.

Counsel relies heavily on hyperbole about the "nightmare" visited upon his clients. The claims against the attorney defendants are indeed serious and well founded. Without question more evidence can and will be adduced as discovery proceeds. As matters stand, plaintiffs respectfully ask that this Court to deny defendants' motions or permit the case to proceed further with an amended complaint and discovery

Very truly yours,

CANNATA, CHING & O'TOOLE LLP
/s/ Therese Y. Cannata
THERESE Y. CANNATA

TYC:hs
720232..Letter Brief to Judge -Reply to-Falk FINAL.wpd