1

2

3

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

4

5

6

7

8

9

10

11

12

13

14

15

16

17

| | |
|---|---|
| ALEXANDER GRAHAM-SULT and DAVID GRAHAM,<br><br>          Plaintiffs,<br><br>     v.<br><br>NICHOLAS P. CLAINOS, an individual; RICHARD L. GREENE, an individual; LINDA MCCALL, an individual; GREENE RADOVSKY MALONEY SHARE & HENNINGH LLP, a limited liability partnership; BILL GRAHAM ARCHIVES LLC, d/b/a WOLFGANG'S VAULT, a limited liability company; NORTON LLC, a limited liability company; and WILLIAM E. SAGAN, an individual,<br><br>          Defendants.<br>_____/ | No. C 10-04877 CW<br><br>ORDER GRANTING DEFENDANT CLAINOS'S ANTI-SLAPP MOTION TO STRIKE AND FOR ATTORNEYS' FEES (Docket No. 33); GRANTING GREENE DEFENDANTS' ANTI-SLAPP MOTION TO STRIKE AND FOR ATTORNEYS' FEES (Docket No. 27) AND DENYING AS MOOT THEIR MOTION TO DISMISS (Docket No. 28); GRANTING BGA DEFENDANTS' MOTION TO DISMISS (Docket No. 23); AND GRANTING PLAINTIFFS' MOTION FOR LEAVE TO SUPPLEMENT THE RECORD (Docket No. 85) |

18

19

20

21

22

23

24

25

26

27

28

Pursuant to California Code of Civil Procedure section 425.16, commonly known as California's anti-Strategic Lawsuit Against Public Participation (anti-SLAPP) statute, Defendant Nicholas P. Clainos and Defendants Greene Radovsky Maloney Share & Henningh LLP (Greene Law Firm), Richard L. Greene and Linda McCall (collectively, Greene Defendants) separately move to strike Plaintiffs Alexander Graham-Sult and David Graham's claims against them and move for attorneys' fees.  The Greene Defendants and Defendants Bill Graham Archives LLC, Norton LLC and William E.

**United States District Court**
For the Northern District of California

Sagan (collectively, BGA Defendants) separately move to dismiss Plaintiffs' claims against them.  Plaintiffs oppose the motions. The motions were heard on April 7, 2011.  After the hearing, Plaintiffs moved for leave to supplement the record.  Clainos and the Greene Defendants opposed Plaintiffs' motion.

Having considered oral argument and the papers submitted by the parties, the Court GRANTS Plaintiffs' motion for leave to supplement the record; GRANTS Clainos's anti-SLAPP motion to strike and for attorneys' fees; GRANTS the Greene Defendants' anti-SLAPP motion to strike and for attorneys' fees and DENIES as moot their motion to dismiss; and GRANTS the BGA Defendants' motion to dismiss.

BACKGROUND

Plaintiffs Graham-Sult and Graham, who are New York and Pennsylvania citizens respectively, are sons of Bill Graham, a concert promoter who worked in the San Francisco Bay Area.  Bill Graham was the sole owner of Bill Graham Enterprises, Inc. (BGE), through which he conducted his concert promotion business.[1]  On October 25, 1991, Bill Graham died in a helicopter crash.  At that time, Plaintiffs Graham-Sult and Graham were fourteen and twenty-three years old respectively.  This lawsuit concerns a dispute over the ownership of intellectual and tangible property Plaintiffs claim their father owned before his death.  The background recited

_____

[1] BGE owned a number of subsidiary entities: Fillmore Corporation; Bill Graham Presents, Inc.; Bill Graham Management, Inc.; and Shoreline Amphitheatre, Ltd.  Greene Decl. ¶ 2.  The Court refers to BGE and these subsidiaries collectively as "BGE."

2

United States District Court
For the Northern District of California

below is based on evidence proffered by the parties.[2]

Clainos, an attorney licensed to practice in California, was appointed executor of Bill Graham's estate under Bill Graham's Last Will and Testament, dated August 2, 1976, and Second Codicil, dated December 22, 1981. Bill Graham's testamentary documents also created trusts for the benefit of Plaintiffs and named Clainos as the trustee to serve until the trusts terminated when Plaintiffs reached twenty-five years of age. Clainos retained the Greene Law Firm to represent him in his role as executor of the estate and trustee of the testamentary trusts. Prior to Bill Graham's death, the Greene Law Firm and Greene, specifically, were counsel to Bill Graham and BGE. During the probate proceedings, Plaintiffs were represented by Philip B. Feldman, an attorney with the law firm known then as Coblentz, Cahen, McCabe & Breyer.

On November 7, 1991, the Marin County Superior Court granted Clainos discretionary powers over Bill Graham's estate, which included BGE. Greene Decl., Ex. E. According to Clainos, he served as executor until August 8, 1995, when probate closed pursuant to the state court's final order of accounting. Clainos Decl. ¶ 4. In his role as executor, Clainos decided that

_____

[2] Generally, on a motion to dismiss, courts may consider only the complaint. Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010). Courts may also consider documents "on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." Id. (citation and internal quotation marks omitted). However, because this Order addresses anti-SLAPP motions to strike, the Court also considers declarations proffered by the parties. See Cal. Civ. Proc. Code § 425.16(b)(2); see also Mindys Cosmetics, Inc. v. Dakar, 611 F.3d 590, 598 (9th Cir. 2010).

United States District Court
For the Northern District of California

Plaintiffs, among other beneficiaries named in Bill Graham's testamentary documents, would receive Bill Graham's "personal possessions located at his home in Corte Madera, commonly known as 'Masada.'"  Greene Decl. ¶ 17.  Allegedly among these possessions were ten scrapbooks, which contained original prints of posters used in concerts promoted by Bill Graham.  Neither Clainos nor Greene conducted an inventory of these personal effects.

On December 9, 1991, Greene investigated the intellectual property rights owned by Bill Graham's estate.  Greene met with Jerry Pompili, one of BGE's vice presidents, who informed Greene that "The Fillmore" trademark and copyrights for most of the posters produced by BGE were registered in Bill Graham's personal name.  Greene Decl. ¶ 16.  However, according to Greene, Pompili represented that "BGE paid for all application and registration fees" and "BGE received all revenues from the sales and licensing of the intellectual property."  Id.  Based on Pompili's representations, Greene concluded that BGE owned the intellectual property registered in Bill Graham's name.

In January 1994, Clainos brokered a deal to sell BGE to BGE's so-called "key employees."  Greene Decl. ¶ 18.  Clainos claims that he did so to placate these employees, who threatened to leave BGE if they were not given the opportunity to purchase it.  According to Clainos, this action was necessary to preserve the value of BGE.  Plaintiffs' trusts were signatories to the sale.

To consummate the transaction, the employees formed BG Presents, Inc. (BGP), which acquired all shares of BGE.  As part of the sale, Plaintiffs' respective testamentary trusts each received

4

United States District Court
For the Northern District of California

a ten-percent share of BGP.  Clainos acquired a thirteen-percent stake.  The transaction also encompassed an agreement concerning the BGE Archives, which were defined to include "all posters, handbills, tickets, photographs, slides, videos, audio tapes and other archival material produced or obtained prior to October 25, 1991 in connection with [BGE] prior to October 25, 1991."  Greene Decl., Ex. O, at 4.  The agreement provided that, in the event of a third-party offer to purchase BGE or the BGE archives, Plaintiffs, along with other beneficiaries, had the option "to purchase all, but not less than all, of the Remaining Archives on the same terms and conditions as offered by the third party."  Id. at 4-5.  The documents related to the transaction, including the BGE Archives agreement, did not specifically identify the intellectual property held by BGE.

On August 8, 1995, the state court entered its final order of distribution.

On or about August 31, 1995, Richard Idell, who was apparently "special counsel to BGE," wrote Greene to inquire about "how the transfer/assignment of copyrights and trademarks was handled in the sale of [BGE] to the key employees."  Greene Decl., Ex. O, at 1. In a letter dated September 1, 1995, Greene responded as follows:

> 1.  As I presume you are aware, most of the tradenames/trademarks/copyrights have always been owned by and in the name of BGE since I understand from Jerry Pompili that BGE paid all the expenses for the applications that he filed.
>
> 2.  Apparently, on some occasions, Jerry put some of the above items in Bill's name.  Thus, to solve that problem we prepared and sent yesterday to Jerry for Nick and Gregg to sign the enclosed Assignment and Acceptance of Assignment.  Once that is done, this should solve any

1    title problems.

2  Greene Decl., Ex. O, at 2.

3       The assignment was "executed as of August 1, 1995" by Clainos,

4  in his role as executor of Bill Graham's estate.  Compl., Ex. B, at

5  CTR01212.  The preamble stated that intellectual property used by

6  BGE was registered in Bill Graham's name and that the assignment's

7  purpose was to "confirm BGE's ownership of" the intellectual

8  property.  Id.  The assignment provided,

9       Assignor hereby assigns, transfers and conveys to BGE
         ("Assignee") any and all right, title and interest of the
10       Decedent in any and all copyrights, tradenames,
         trademarks and servicemarks claimed by or registered in
11       the name of the Decedent, other than the copyright to the
         Decedent's autobiography.
12
13  Id.  On July 29, 1996, the assignment was recorded in the U.S.
    Copyright Office.
14
15       In December 1997, BGP was sold to SFX Broadcasting, Inc.  In

16  accordance with the BGE Archives agreement explained above, SFX's

17  offer to purchase BGP triggered Plaintiffs' right of first refusal,

    which Plaintiffs declined to exercise.  The parties' statement of
18
    intent regarding the sale, to which Plaintiffs' trusts were
19
    signatories, recited that SFX's acquisition of BGP included "all
20
    intellectual property rights used in the operation of BGP's
21
    business (including the rights to the names 'Fillmore' and 'Bill
22
    Graham Presents.')."  Greene Decl., Ex. S, at 3.  Section 3.18 of
23
    the SFX Purchase Agreement, entitled "Intellectual Property;
24
    Software," provided,
25
26       Schedule 3.18 attached hereto contains, to each Selling
         Shareholder's Knowledge, a true and complete list of all
         trade names, trademarks, trade dress, domain names,
27       service marks, logos, copyrights, patents, and/or similar

28                                   6

rights (including registrations and applications to
register or renew the registration of any of the
foregoing), trade secrets, inventions, know-how,
specifically developed computer software and other
intellectual property rights or other proprietary rights
or confidential information ("Intellectual Property")
owned or used by the Company or material to the conduct
of the Company's business, including whether such
Intellectual Property is owned or licensed by the
Company.

Id., Ex. T § 3.18.   Schedule 3.18 was labeled "Intellectual

Property and Software Owned or Used by the Company."   Id. at ii.

It contained a copy of Clainos's 1995 Assignment and the

recordation of the assignment in the U.S. Copyright Office, and

indicated that various copyrights and "The Fillmore" trademark were

owned by BGP.   Id., Ex. T.

Feldman, who also represented Plaintiffs during the SFX sale,

was given a copy of the SFX Purchase Agreement.   Greene Decl. ¶ 29;

Greene Supp. Decl. ¶ 6 and Ex. SC.[3]   However, Feldman has "no

recollection of seeing or receiving Schedule 3.18, which contains

the Assignment, prior to 2011."   Am. Feldman Decl. ¶ 2.   He does

---

[3] Plaintiffs object to Exhibit SC of the Greene Supplemental
Declaration, which contains a December 11, 1997 letter faxed by
Greene to Feldman concerning the SFX Purchase Agreement.
Plaintiffs argue that, because the letter is unsigned, it lacks
relevance.   Plaintiffs, however, do not object to paragraph six of
the Greene Supplemental Declaration, in which Greene states that
Exhibit SC "is a true and correct copy of correspondence I faxed to
Plaintiffs' attorney, Philip Feldman, on or about December 11, 1997
(the same day the SFX Acquisition Agreement was signed), following
a conversation we had on that day."   Greene Supp. Decl. ¶ 6.
Greene also states that he sent Feldman "certain excerpts from the
Agreement relating to intellectual property . . . , including the
intellectual property representations and warranties, which
incorporate by reference the liability-limiting disclosure schedule
setting forth a description of the intellectual property owned by
BGE."   Id.   For his part, Feldman does not deny that he had this
conversation with Greene or that he received Greene's faxed letter.
Because Exhibit SC is relevant, Plaintiffs' objection is OVERRULED.

7

not assert that he did not receive a copy of the SFX Purchase Agreement in 1997.  Jacques Fabert, on behalf of Plaintiff David Graham's trust,[4] and Clainos, on behalf of Plaintiff Alexander Graham-Sult's trust, agreed to the terms of the transaction.

Thereafter, Clear Channel Communications, Inc., purchased SFX. Clear Channel allegedly transferred the copyrights previously held by BGE and portions of the BGE Archives to Bill Graham Archives, LLC.  In July 2002, Clear Channel sold Bill Graham Archives, LLC, to Sagan and Norton, LLC, which is allegedly owned by Sagan.

Plaintiffs assert they were not aware of Clainos's 1995 Assignment until February 2009, when they discovered it in a box of documents at the former headquarters of BGE.  They found the assignment in an "SFX Sales Binder;" the assignment was located in "Schedule 3.18."  Graham-Sult Decl. ¶ 4; Godinez Decl. ¶ 6.  They also allege that, in 2009, they learned that Clainos had transferred scrapbooks contained in their father's "personal warehouse" to a "BGE offsite corporate warehouse" so that the scrapbooks could be included in the BGE Archives.  Compl. ¶ 25.

Plaintiffs filed their lawsuit on October 27, 2010.

DISCUSSION

I.   Anti-SLAPP Motions to Strike

California's anti-SLAPP statute provides,

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection

---

[4] After Plaintiff David Graham's trust terminated when he reached twenty-five years of age, he transferred its assets to another trust, for which Fabert served as trustee.

United States District Court
For the Northern District of California

with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. Proc. Code § 425.16(b)(1).  California anti-SLAPP motions to strike are available to litigants proceeding in federal court. Thomas v. Fry's Elecs., Inc., 400 F.3d 1206, 1206 (9th Cir. 2005).

Courts analyze these motions in two steps.  "First, the defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech." Mindys, 611 F.3d at 595 (citation and internal quotation marks omitted).  "Second, once the defendant has made a prima facie showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." Id.

"At [the] second step of the anti-SLAPP inquiry, the required probability that [a party] will prevail need not be high." Hilton v. Hallmark Cards, 580 F.3d 874, 888-89 (9th Cir. 2009).  A plaintiff must show "only a 'minimum level of legal sufficiency and triability.'" Mindys, 611 F.3d at 598 (quoting Linder v. Thrifty Oil Co., 23 Cal. 4th 429, 438 n.5 (2000)).  The plaintiff need only "state and substantiate a legally sufficient claim." Mindys, 611 F.3d at 598 (citation and internal quotation marks omitted).  In conducting its analysis, the "court 'does not weigh the credibility or comparative probative strength of competing evidence,' but 'should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.'" Id. at 599 (quoting

<u>Wilson v. Parker, Covert & Chidester</u>, 28 Cal. 4th 811, 821 (2002)).

Unless an action is brought pursuant to certain sections of the California Government Code, "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs."  Cal. Civ. Proc. Code § 425.16(c); <u>see also</u> <u>Bernardo v. Planned Parenthood Fed. of Am.</u>, 115 Cal. App. 4th 322, 360-367 (2004) (explaining policy behind mandatory fees and costs provision of anti-SLAPP statute).

A.   Clainos's Motion to Strike

Against Clainos, Plaintiffs bring claims for breach of fiduciary duty, breach of trust, conversion, intentional misrepresentation, negligent misrepresentation, fraudulent concealment, promissory estoppel and unjust enrichment.

1.   Arising From a Protected Activity

Clainos argues that Plaintiffs' claims arise from his actions as the executor of Bill Graham's estate, all of which he contends were in the furtherance of his right to petition.

Under the anti-SLAPP statute, an act in the furtherance of an individual's right to petition includes "any written or oral statement or writing made before . . . judicial proceeding" and "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body." Cal. Civ. Proc. Code § 425.16(e).  The "'anti-SLAPP statute's definitional focus is . . . the defendant's <u>activity</u> that gives rise to his or her asserted liability -- and whether that activity constitutes protected speech or petitioning.'"  <u>Martinez v. Metabolife Int'l, Inc.</u>, 113 Cal. App. 4th 181, 187 (2003) (quoting

10

United States District Court
For the Northern District of California

<u>Navellier v. Slatten</u>, 29 Cal. 4th 82, 92 (2002); emphasis by <u>Navellier</u> court).  The "principal <u>thrust or gravamen</u> of the plaintiff's cause of action . . . determines whether the anti-SLAPP statute applies."  <u>Martinez</u>, 113 Cal. App. 4th at 188 (citation omitted; emphasis in original).  Where a claim is based on "protected activity and unprotected activity, it is subject to section 425.16 unless the protected conduct is merely incidental to the unprotected conduct."  <u>Haight Ashbury Free Clinics, Inc. v. Happening House Ventures</u>, 184 Cal. App. 4th 1539, 1551 (2010) (citation and internal quotation marks omitted).

Plaintiffs' claims are based, in part, on statements made in the probate proceedings.  They contend that Clainos misrepresented the nature of their father's estate in documents filed in state court.  And, as discussed further below, they complain that Clainos's fraud infected the state court's judgment.  Clainos's conduct before the state court is more than incidental to this case.

Because Plaintiffs' claims are based, in substantial part, on statements Clainos made in connection with an issue under consideration by a judicial body, they fall within the scope of the anti-SLAPP statute.  The burden therefore shifts to Plaintiffs to state and substantiate their claims against Clainos.

        2.   Probability of Success

           a.   Statute of Limitations

Clainos contends that Plaintiffs' claims are barred by the

relevant statutes of limitations.[5]   Plaintiffs do not dispute that, because they brought their case in October 2010, their claims are time-barred unless they have a basis for tolling relevant limitations periods.

Under California law, a limitations period may be tolled until the basis of a claim "is discovered or with reasonable diligence could have been discovered." Elec. Equip. Express, Inc. v. Donald H. Seiler & Co., 122 Cal. App. 3d 834, 855 (1981).   However, where a fiduciary relationship between the parties exists at the time the claim arose, a plaintiff's duty of diligence is relaxed because "'a fiduciary has a duty to make a full and fair disclosure of all facts which materially affect the rights and interest of the parties, and, where a fiduciary relationship exists, facts which would ordinarily require investigation may not excite suspicion.'" Id. (quoting Bennett v. Hibernia Bank, 47 Cal. 2d 540, 559-60 (1956)).   In such circumstances, "a plaintiff need not disprove that an earlier discovery could have been made upon a diligent inquiry but need show only that he made an actual discovery of hitherto unknown information within the statutory period before

---

[5] Plaintiffs' claims other than for breach of fiduciary duty must have been brought within three years of the date they accrued. See Cal. Civ. Proc. Code § 338(d); Cal. Prob. Code § 16460. California courts have reached varying conclusions regarding the limitations period applicable to claims for breach of fiduciary duty.   Compare David Welch Co. v. Erskine & Tulley, 203 Cal. App. 3d 884, 893 (1988) (applying four-year limitations period) with City of Vista v. Robert Thomas Secs., Inc., 84 Cal. App. 4th 882, 889 (2000) (concluding that three-year limitations period applies because plaintiff's breach of fiduciary duty claim was grounded in fraud).   Even under the more generous four-year limitations period, Plaintiffs' breach of fiduciary duty claim would be barred, unless they can justify the tolling of the statute.

United States District Court
For the Northern District of California

filing the action." <u>Bennett</u>, 47 Cal. 2d at 563.  However, a
plaintiff "does have a duty to investigate even where a fiduciary
relationship exists when 'he has notice of facts sufficient to
arouse the suspicions of a reasonable man.'" <u>Elec. Equip.</u>, 122
Cal. App. 3d at 855 (quoting <u>Bennett</u>, 47 Cal. 2d at 563).

Plaintiffs assert that their claims concerning the disputed
intellectual property did not accrue until they discovered the 1995
Assignment.  <u>See</u> Pls.' Opp'n to Clainos Mot. to Dismiss 5:16-17.
Clainos claims that Plaintiffs had notice of the 1995 Assignment in
1997, through the SFX sale.  He cites Greene's declaration that
Feldman was provided a copy of the SFX Purchase Agreement, which
referred to Schedule 3.18 that contained the 1995 Assignment.  In
response, Plaintiffs state that they were not aware of the 1995
Assignment before discovering it in the Schedule 3.18 section of
the SFX Sales Binder they discovered in February 2009.  Plaintiffs
and Fabert state that, prior to that time, they never saw the
binder, Schedule 3.18 or the 1995 Assignment.  Plaintiffs' current
counsel represents that she, along with other legal staff, reviewed
"documents from various sources, including plaintiffs and"
Feldman's law firm.  Cannata Am. Decl. ¶ 3.  In particular, counsel
states that none of the "correspondence" from Feldman's firm that
she reviewed made reference to the intellectual property at issue
in this action or to the 1995 Assignment.  <u>Id.</u> ¶ 4.  Feldman
represents that he does not recall whether he saw or received
Schedule 3.18 prior to 2011.

Plaintiffs' evidence does not contradict Clainos's showing
that, in 1997, the SFX Purchase Agreement was sent to Feldman and

13

**United States District Court**
For the Northern District of California

the Agreement included the 1995 Assignment.  Plaintiffs do not
dispute that Feldman was their attorney for the purposes of the SFX
sale.  Nor do they offer a declaration from Feldman stating that he
did not receive the SFX Purchase Agreement in 1997.  That Feldman,
approximately fourteen years later, does not recall seeing or
receiving Schedule 3.18 and the 1995 Assignment is not inconsistent
with Greene's declaration that the SFX Purchase Agreement was
provided to Feldman and an inference that he received it.  Under
general agency principles, "an attorney is his client's agent, and
. . . the agent's knowledge is imputed to the principal even where
. . . the agent does not actually communicate with the principal,
who thus lacks actual knowledge of the imputed fact." Herman v.
L.A. Cnty. Metro. Transp. Auth., 71 Cal. App. 4th 819, 828 (1999);
see also Stalberg v. W. Title Ins. Co., 230 Cal. App. 3d 1223,
1230-31 (1991) (concluding that law firm's knowledge of fact was
imputed to clients); Cal. Civ. Code § 2332 ("As against a
principal, both principal and agent are deemed to have notice of
whatever either has notice of, and ought, in good faith and the
exercise of ordinary care and diligence, to communicate to the
other.").  This principle of constructive notice is irrebutable.
Herman, 71 Cal. App. 4th at 828.  Because the SFX Sales Agreement
was provided to Feldman, and this Agreement referred to and
incorporated Schedule 3.18 by reference, Plaintiffs are charged
with notice of the 1995 Assignment as of 1997.

Furthermore, Section 3.18 of the SFX Sales Agreement stated
that, by signing the document, Plaintiffs warranted through their
respective trusts that BGP owned the intellectual property listed

14

in Schedule 3.18.  This warranty imposed on Plaintiffs a duty to investigate the intellectual property owned by BGP, notwithstanding Clainos's role as their fiduciary, because they were affirmatively representing that BGP owned the copyrights and trademark at issue in this case.  Indeed, even if the 1995 Assignment were not sent to Feldman, an investigation into the facts underlying the warranty in Section 3.18 would have revealed the 1995 Assignment, which was recorded with the Copyright Office.  Thus, Feldman's receipt of the SFX Sales Agreement bars Plaintiffs' claims against Clainos for the disputed intellectual property.

In addition, Fabert signed the SFX Sales Agreement as trustee of Plaintiff David Graham's trust.  As noted above, in doing so, Fabert represented to Clear Channel that BGP owned the poster copyrights and "The Fillmore" trademark.  Although Fabert asserts that he never received a copy of Schedule 3.18, the 1995 Assignment or the SFX Sales Binder, he does not contend that anyone prevented him from obtaining a copy of Schedule 3.18, which was incorporated by reference in the SFX Sales Agreement.  Under California law, "one who assents to a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument." Madden v. Kaiser Found. Hosps., 17 Cal. 3d 699, 710 (1976); see also Circuit City Stores, Inc. v. Ahmed, 283 F.3d 1198, 1200 (9th Cir. 2002).  Had Fabert investigated the facts underlying the warranty he made, he would have discovered the 1995 Assignment.  Thus, Plaintiff David Graham's claims against Clainos based on the disputed intellectual property are time-barred based on both Feldman's receipt of the SFX Sales Agreement and Fabert's assent to

15

United States District Court
For the Northern District of California

it.

Finally, many of the posters contained the notice, "© Bill Graham." Nimmer Decl. ¶¶ 14, 39-43. This should have put Plaintiffs on notice, at the time of the probate proceedings, that their father may have registered intellectual property in his name. Indeed, Plaintiffs acknowledge that Bill Graham had registered the copyrights and "The Fillmore" trademark with the Copyright Office and the U.S. Patent and Trademark Office respectively. See, e.g., Compl. ¶ 20; Nimmer Decl. ¶¶ 14-16. And, as Plaintiffs recognize, a search of publically-available records would have shown that this intellectual property was registered in Bill Graham's name. See, e.g., Graham-Sult Decl. ¶ 4 (noting that an investigation at the Copyright Office led to his "realization" that his father held "over 300 poster copyrights"). All this further supports a conclusion that Plaintiffs' claims against Clainos concerning the intellectual property are time-barred.

Plaintiffs' claims against Clainos concerning the scrapbooks fare no better. Plaintiffs do not dispute that, during the probate period, they were responsible for identifying the personal property of their father to which they were entitled. And, at the time that BGE was sold to the key employees in 1994, Plaintiffs knew that anything claimed by BGE would be included in the sale. This distinction -- between Bill Graham's personal scrapbooks and the BGE archives -- should have put Plaintiffs, who were represented by counsel, on notice that they should investigate the nature of Bill Graham's personal holdings. They did not do so. Although a specific item-by-item inventory was never undertaken, Plaintiffs do

16

not contend that they requested one and were denied.

Accordingly, Plaintiffs' claims against Clainos were time-barred by the time they brought their lawsuit in October 2010.

b.   Res Judicata

Clainos also asserts that Plaintiffs' action lacks merit because, based on the state court's final order, it is barred by the doctrine of res judicata.

The final order of a probate court "releases the personal representative and the sureties from all claims of the heirs or devisees and of any persons affected thereby based upon any act or omission directly authorized, approved, or confirmed in the judgment or order." Cal. Prob. Code § 7250(a).  This rule does "not apply where the judgment or order is obtained by fraud or conspiracy or by misrepresentation contained in the petition or account or in the judgment as to any material fact." Id. § 7250(c).  Such a misrepresentation may include "the omission of a material fact." Id.

Plaintiffs contend that the order closing probate was based on Clainos's misrepresentations and omissions concerning the nature of their father's estate.  However, Plaintiffs' claims against Clainos regarding the disputed scrapbooks are precluded by the state court's final order.  To make out their claim of fraud, Plaintiffs contend that the scrapbooks did not appear on any inventory compiled by Clainos or the Greene Law Firm.  However, Clainos and Greene state, and Plaintiffs do not dispute, that no specific inventory of Bill Graham's personal memorabilia was ever made.  And, as noted above, Plaintiffs do not contend that they sought

17

such an inventory, only to be denied.  Plaintiffs assert that

Clainos "controlled our access as well as the definition of what

specific Archive items we could have" and that they "were never

given complete access to the Archives."  Graham-Sult Decl. ¶ 7.

Even if this were true and even if it prevented them from

discovering items in their father's personal collection, Plaintiffs

were represented by counsel and could have objected in the probate

proceedings.  Indeed, they do not dispute that they were

responsible for "going through" their father's personal items.

Greene Decl. ¶ 17.  Plaintiffs, however, did not raise their

concerns before the state court.

Accordingly, to the extent they are based on the disputed

scrapbooks, Plaintiffs' claims are barred by the state court's

final order.  For this additional reason, Plaintiffs' claims

against Clainos regarding the scrapbooks lack merit.

c.   Litigation Privilege

California Civil Code section 47(b) provides that

communications made in or related to judicial proceedings are

absolutely immune from tort liability.  The California Supreme

Court explains that the purpose of the privilege is "to afford

litigants . . . the utmost freedom of access to the courts without

fear of being harassed subsequently by derivative tort actions."

Silberg v. Anderson, 50 Cal. 3d 205, 213 (1990).  "The litigation

privilege applies to any communications (1) made in a judicial

proceeding; (2) by litigants or other participants authorized by

law; (3) to achieve the objects of the litigation; (4) that have

some connection or logical relation to the action."  Sharper Image

18

<u>Corp. v. Target Corp.</u>, 425 F. Supp. 2d 1056, 1077 (N.D. Cal. 2006) (citing <u>Silberg</u>, 50 Cal. 3d at 212).  Once these requirements are met, § 47(b) operates as an absolute privilege.  <u>Silberg</u>, 50 Cal. 3d at 216.  "Any doubt about whether the privilege applies is resolved in favor of applying it."  <u>Kashian v. Harriman</u>, 98 Cal. App. 4th 892, 913 (2002).

As noted above, a substantial portion of Plaintiffs' action is based on statements Clainos made in the probate proceedings.  <u>See,</u> <u>e.g.</u>, Compl. ¶ 59.  Thus, to the extent that Plaintiffs' claims are based on these statements, the litigation privilege immunizes Clainos from liability.  Plaintiffs' reliance on <u>Action Apartment</u> <u>Association, Inc. v. City of Santa Monica</u>, 41 Cal. 4th 1232 (2007), is unavailing.  <u>Action Apartment</u> teaches that the litigation privilege is trumped by statutes that are "more specific than the litigation privilege" and that "would be significantly or wholly inoperable" if the privilege were asserted.  <u>Id.</u> at 1246.  These requirements are met by criminal statutes penalizing perjury and subornation of perjury and statutes related to state bar discipline.  <u>Id.</u>  Plaintiffs, however, do not cite any authority that their claims arise under statutes to which the litigation privilege does not apply.  Indeed, following <u>Action Apartment</u>, state courts have recognized the continued breadth of the litigation privilege, reaffirming that it "immunizes defendants from virtually any tort liability (including claims for fraud), with the sole exception of causes of action for malicious prosecution."  <u>Olsen v. Harbison</u>, 191 Cal. App. 4th 325, 333 (2010) (citation omitted).

United States District Court
For the Northern District of California

1    Because Plaintiffs have not otherwise stated claims against

2    Clainos, their action is stricken as a SLAPP.  Although leave to

3    amend may be granted,[6] Plaintiffs present no evidence or argument

4    suggesting that amendment would change the outcome.  Thus, leave to

5    amend is denied as futile.  As a prevailing defendant, Clainos is

6    entitled to attorneys' fees and costs.  Cal. Civ. Proc. Code

7    § 425.16(c).

8        B.   Greene Defendants' Motion to Strike

9        Against the Greene Defendants, Plaintiffs bring claims for

10   aiding and abetting a breach of fiduciary duty, conversion,

11   intentional misrepresentation, negligent misrepresentation and

12   fraudulent concealment.  Plaintiffs state that these claims are

13   based on the Greene Defendants' "wrongful participation in the

14   conversion of estate assets and coverup."  Pls.' Opp'n to Greene

15   Firm Defs.' Mot. to Strike 14:10.

16       1.   Arising from Protected Activity

17       Plaintiffs' claims against the Greene Defendants are subject

18   to the anti-SLAPP statute for the same reasons that their claims

19   against Clainos are.  Plaintiffs plead that some of the alleged

20   misrepresentations and non-disclosures of which they complain were

21   contained in documents these Defendants prepared and filed in state

22   _____

23       [6] California law prohibits state courts from affording leave
     to amend following a grant of a motion to strike under the anti-
24   SLAPP statute.  See, e.g., Simmons v. Allstate Ins Co., 92 Cal.
     App. 4th 1068, 1073-74 (2001).  However, federal district courts
25   retain discretion to grant leave to amend, notwithstanding such a
     motion.  See Greensprings Baptist Christian Fellowship Trust v.
26   Cilley, 629 F.3d 1064, 1066 n.1 (9th Cir. 2010) (citing Verizon
     Del., Inc. v. Covad Commc'ns Co., 377 F.3d 1081, 1091 (9th Cir.
27   2004)).

28                                    20

court.  See, e.g., Compl. ¶ 42(a)-(d).  These Defendants' conduct before the state court was more than incidental to Plaintiffs' claims.

Because Plaintiffs' claims are based, in substantial part, on the Greene Defendants' statements made in connection with an issue under consideration by a judicial body, they fall within the scope of the anti-SLAPP statute.  The burden therefore shifts to Plaintiffs to state and substantiate their claims against the Greene Defendants.

2.    Probability of Success

Plaintiffs' claims against the Greene Defendants are barred by the statute of limitations and the litigation privilege[7] for the reasons stated above.  Because Plaintiffs have not otherwise stated claims against the Greene Defendants, their action is stricken as a SLAPP.  Although leave to amend may be granted, Plaintiffs present no evidence or argument suggesting that amendment would change the outcome.  Thus, leave to amend is denied as futile.  As prevailing defendants, the Greene Defendants are entitled to attorneys' fees and costs.  Cal. Civ. Proc. Code § 425.16(c).

The Greene Defendants' motion to dismiss is denied as moot.

II.  BGA Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.

---

[7] Plaintiffs' claims against the Greene Defendants concerning the disputed scrapbooks are based on these Defendants' "preparing and filing false inventories and accountings with the Probate Court" and "making intentionally false representations to plaintiffs and the Probate Court."  This conduct clearly falls within the scope of the litigation privilege.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Civ. P. 8(a).  Dismissal under Rule 12(b)(6) for failure to state a claim is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff.  <u>NL Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986).  However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true.  <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009) (citing <u>Twombly</u>, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile.  <u>Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.</u>, 911 F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint."  <u>Reddy v. Litton Indus., Inc.</u>, 912 F.2d 291, 296 (9th Cir. 1990).  Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading.  <u>Id.</u> at 296-97.

Against the BGA Defendants, Plaintiffs bring claims for conversion, promissory estoppel, unjust enrichment, copyright

infringement and declaratory relief.  They seek a declaration that they "and/or the Estate of Bill Graham are the rightful owners of" the copyrights discussed above and "approximately ten (10) scrapbooks."  Compl. ¶ 102.  Plaintiffs do not identify the scrapbooks at issue in their complaint.

A.   Conversion

Under California law, a claim for conversion requires a plaintiff to allege (1) "ownership or right to possession of property;" (2) a defendant's wrongful act toward the property, causing interference with the plaintiff's possession; and (3) damage to the plaintiff.  PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP, 150 Cal. App. 4th 384, 394 (2007).

The 1995 Assignment precludes Plaintiffs' claim against the BGA Defendants for the alleged conversion of copyrights.[8] Plaintiffs do not allege any facts indicating that they had any right to possession of the disputed copyrights in July 2002, the month the BGA Defendants acquired them.  By that time, even under Plaintiffs' allegations, the copyrights already had been transferred from Bill Graham's estate to BGE to BGP to SFX to Bill Graham Archives.  Furthermore, Plaintiffs do not plead facts suggesting that the BGA Defendants engaged in wrongdoing.  Although they contend that Sagan should have known that the 1995 Assignment

_____

[8] As noted above, the Court generally may consider only the complaint on a motion to dismiss.  However, the 1995 Assignment is properly before the Court on the BGA Defendants' motion because Plaintiffs' complaint refers to the document, it is central to Plaintiffs' claim, and no party questions its authenticity.  See Daniels-Hall, 629 F.3d at 998.

United States District Court

For the Northern District of California

was defective, they plead no facts to support this contention.

Similarly, Plaintiffs do not allege facts suggesting that they had an ownership interest in the ten scrapbooks.  Like the copyrights, Plaintiffs allege that these items were transferred between several entities before the BGA Defendants acquired them in July 2002.  Furthermore, Plaintiffs do not allege how the BGA Defendants acted improperly with respect to the ten scrapbooks.

Accordingly, Plaintiffs' conversion claim against the BGA Defendants is dismissed.  Because amendment would be futile, the Court does not afford leave to amend.

B.   Promissory Estoppel

To state a claim for promissory estoppel, a plaintiff must plead "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance."  US Ecology, Inc. v. State, 129 Cal. App. 4th 887, 901 (2005) (citation and internal quotation and editing marks omitted).

Plaintiffs' promissory estoppel claim against the BGA Defendants is based on Clainos's and the Greene Defendants' alleged promises to give them all of Bill Graham's scrapbooks.  Plaintiffs do not contend that the BGA Defendants ever made them a promise. Because Plaintiffs fail to allege that the BGA Defendants promised them anything, Plaintiffs' promissory estoppel claim against the BGA Defendants is not cognizable.

Neither Powers v. Pacific Diesel Engine Company, 206 Cal. 334 (1929), nor Burgess v. California Mutual Building and Loan

United States District Court

For the Northern District of California

Association, 210 Cal. 180 (1930), require a contrary conclusion. Powers stands for the proposition that an original owner may be estopped from asserting ownership over property in light of a bona fide purchaser's claim if the original owner negligently entrusted the property to a third party who sold the property to the purchaser. 206 Cal. at 341; see also Reynolds v. Reynolds, 54 Cal. 2d 669, 675 (1960) (explaining that Powers reflects the principle of "upholding claims of bona fide purchasers when any basis of estoppel could be found to exist"). The Powers court relied on the precept that, "where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer." 206 Cal. at 339 (citation omitted). This principle is not applicable to the promissory estoppel claim in this case. The BGA Defendants did not originally own the scrapbooks, nor did they negligently entrust them to Clainos. Burgess concerned a third party enforcing a promise made by a promisor to another party. 210 Cal. at 186-88. Here, as noted above, Plaintiffs have failed to allege any promise by the BGA Defendants.

Accordingly, Plaintiffs' promissory estoppel claim against the BGA Defendants is dismissed. Because this claim is based on alleged promises made by Clainos and the Greene Defendants and there is no indication that amendment would save this claim, this dismissal is without leave to amend.

C.   Unjust Enrichment

Plaintiffs' unjust enrichment claim is based on their allegations that the BGA Defendants "wrongfully acquired the copyrights and the scrapbooks." Compl. ¶ 93. However, assuming

25

that unjust enrichment is a cognizable cause of action under California law, Plaintiffs allege no facts to suggest that the BGA Defendants acted improperly.  As stated above, Plaintiffs do not plead how the BGA Defendants knew or should have known that SFX's ownership of the copyrights and the scrapbooks was improper.

Accordingly, Plaintiffs' unjust enrichment claim against the BGA Defendants is dismissed.  Because there is no indication that amendment would save this claim, this dismissal is without leave to amend.

D.   Copyright Infringement

To bring a claim for copyright infringement, a plaintiff must be the "legal or beneficial owner of an exclusive right under a copyright" and allege "infringement of that particular right committed while he or she is the owner of it."  17 U.S.C. § 501(b).  As already stated, based on the 1995 Assignment and the alleged subsequent transfers of the disputed copyrights, Plaintiffs do not own the copyrights at issue.  Accordingly, their copyright infringement claim against the BGA Defendants is dismissed.  Because amendment would not save this claim, this dismissal is without leave to amend.

E.   Declaratory Judgment

The Declaratory Judgment Act (DJA) permits a federal court to "declare the rights and other legal relations" of parties to a "case of actual controversy."  28 U.S.C. § 2201; see Wickland Oil Terminals v. Asarco, Inc., 792 F.2d 887, 893 (9th Cir. 1986). The "actual controversy" requirement of the Declaratory Judgment Act is the same as the "case or controversy" requirement of Article III of

United States District Court
For the Northern District of California

the United States Constitution.  Am. States Ins. Co. v. Kearns, 15

F.3d 142, 143 (9th Cir. 1994).

Plaintiffs' declaratory judgment claim against the BGA

Defendants fails because they have not alleged facts showing that

there is an actual case or controversy.  Accordingly, this claim is

dismissed.  Because there is no indication that amendment would

save any of their claims and permit them to show an actual case or

controversy, this dismissal is without leave to amend.

                              CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion

for leave to supplement the record; GRANTS Clainos's anti-SLAPP

motion to strike and for attorneys' fees; GRANTS the Greene

Defendants' motion to strike and for attorneys' fees and DENIES as

moot their motion to dismiss; and GRANTS the BGA Defendants' motion

to dismiss.  Plaintiffs' actions against Clainos and the Greene

Defendants are stricken as SLAPPs.  Their claims against the BGA

Defendants are dismissed without leave to amend.

As noted above, under the anti-SLAPP statute, Clainos and the

Greene Defendants are entitled to attorneys' fees and costs.  These

Defendants may seek fees and costs in accordance with Civil L.R.

54-1 and 54-5.

The Clerk shall enter judgment and close the file.

IT IS SO ORDERED.

Dated: 6/24/2011

                              CLAUDIA WILKEN
                              United States District Judge