1  RONALD E. MALLEN (No. 40928)
   rmallen@hinshawlaw.com
2  CASSIDY E. CHIVERS (No. 203043)
   cchivers@hinshawlaw.com
3  CHRISTINA A. LEE (No. 257905)
   clee@hinshawlaw.com
4  HINSHAW & CULBERTSON LLP
   One California Street, 18th Floor
5  San Francisco, CA  94111
   Telephone:    415/362-6000
6  Facsimile:    415/834-9070

7  JEROME B. FALK, JR. (No. 39087)
   jfalk@howardrice.com
8  JONATHAN W. HUGHES (No. 186829)
   jhughes@howardrice.com
9  HOWARD RICE NEMEROVSKI CANADY
         FALK & RABKIN
10 A Professional Corporation
   Three Embarcadero Center, 7th Floor
11 San Francisco, California  94111-4024
   Telephone:    415/434-1600
12 Facsimile:    415/677-6262

13 Attorneys for Defendants
   RICHARD L. GREENE, LINDA McCALL,
14 GREENE RADOVSKY MALONEY SHARE &
   HENNIGH LLP, a limited liability partnership

15

16                    UNITED STATES DISTRICT COURT

17                   NORTHERN DISTRICT OF CALIFORNIA

18                           OAKLAND DIVISION

19 ALEXANDER GRAHAM-SULT, and DAVID          No. CV 10-4877 CW
   GRAHAM,
20                                           Action Filed: October 27, 2010
                Plaintiffs,                  Judgment Filed: June 27, 2011
21
      v.                                     MOTION FOR ATTORNEYS FEES
22                                           [CIVIL L.R. 54-5]
   NICHOLAS P. CLAINOS, RICHARD L.
23 GREENE, LINDA McCALL, GREENE              Date:    Thursday, September 22, 2011
   RADOVSKY MALONEY SHARE &                  Time:    2:00 p.m.
24 HENNIGH LLP, BILL GRAHAM ARCHIVES          Place:   Courtroom 2, 4th Floor
   LLC, d/b/a WOLFGANG'S VAULT, NORTON       Judge:   Hon. Claudia Wilken
25 LLC, and WILLIAM E. SAGAN,

26              Defendants.

27

28

**TABLE OF CONTENTS**

**Page**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION AND STATEMENT OF ISSUES. | | 1 |
| II. | FACTUAL BACKGROUND. | | 2 |
| | A. | After Plaintiffs File Complaint, The Greene Defendants Retain The Howard Rice And Hinshaw Law Firms. | 2 |
| | B. | Greene's Attorneys Conduct Preliminary Fact Investigation, Legal Analysis And Assessment. | 3 |
| | C. | The Greene Defendants' Anti-SLAPP Motion To Strike. | 5 |
| | D. | The Greene Defendants' Reply To Plaintiffs' Oppositions. | 6 |
| | E. | Hearing And Post-Hearing Activities. | 6 |
| III. | THE GREENE DEFENDANTS ARE ENTITLED TO ATTORNEYS FEES AND COSTS. | | 7 |
| IV. | THE AMOUNT OF ATTORNEYS THE GREENE DEFENDANTS ARE SEEKING IS REASONABLE. | | 8 |
| | A. | The Hourly Rates Charged By The Hinshaw And Howard Rice Firms Are Reasonable. | 8 |
| | B. | The Amount Of Time Spent By The Lawyers Was Reasonable. | 9 |
| | C. | The Overall Amount Of The Attorneys Fees Sought Is Reasonable. | 10 |
| V. | CONCLUSION. | | 11 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628 (1996) ............ 7, 9

*Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53 (2002) ................... 7

*Ketchum v. Mosses*, 24 Cal. 4th 1122 (2001) ........................................ 9

*Kearney v. Foley and* Lardner, 553 F. Supp. 2d 1178, 1183-84 (S.D. Cal. 2008) .... 8

*Kershaw v. Maryland Cas. Co.*, 172 Cal. App. 2d 248 (1959) ........................ 9

*Martino v. Denevi*, 182 Cal. App. 3d 553, 559 (1959) ............................... 9

*Metabolife Int'l, Inc. v. Wornick*, 213 F. Supp. 2d 1220 (S.D. Cal. 2002) ........ 11

*Premier Med. Mgmt. Sys., Inc. v. California Ins. Guar. Ass'n*, 163 Cal. App. 4th 550 (2008) ......................................................... 7

*Stokus v. Marsh*, 217 Cal. App. 3d 647 (1990) ..................................... 7

**Statutes and Rules**

Bus. & Prof. Code §6068(o)(2) ...................................................... 2, 4

Code Civ. Proc.
    §425.16 ....................................................................... 1
    §425.16(c) .................................................................... 1, 7

Civil L.R. 54-5(b)(1) .............................................................. 1

...

PLEASE TAKE NOTICE THAT on September 22, 2011 at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 2, 4th Floor of the above-captioned court located at 1301 Clay Street, Oakland, CA 94612-5212, Defendants Richard Greene, Linda McCall, and Greene Radovsky Maloney Share & Hennigh LLP (collectively "the Greene Defendants" or "the Greene firm") will and hereby do move this Court for an Order awarding attorneys fees pursuant to California Code of Civil Procedure §425.16(c) and this Court's Order granting the Greene Defendants' Special Motion to Strike pursuant to California's Anti-Strategic Lawsuit Against Public Participation (Anti-SLAPP) statute, California Code of Civil Procedure §425.16.

## I. INTRODUCTION AND STATEMENT OF ISSUES.

Plaintiffs Alexander Graham-Sult and David Graham ("Plaintiffs") filed a complaint filled with scurrilous accusations against well-respected lawyers and their law firm. The thirty-two page Complaint contains 102 paragraphs alleging various wrongdoing dating back more than two decades. All of these claims, as the Court found, were subject to the anti-SLAPP statute. Order 20:8-21:20, ECF No. 93. This motion follows the Court's order that the alleged facts and claims were not supported by evidence and law to meet the minimal *prima facie* standard. The Court ordered that, as prevailing parties, the Greene Defendants are entitled to attorneys' fees and costs. Cal. Code Civ. Proc. §425.16(c).[1]

---

[1] As required by Civil L.R. 54-5(b)(1), counsel for the Greene Defendants sent a letter to Plaintiffs' counsel, dated July 6, 2011, in an attempt to confer about resolving any disputes with respect to this Motion. Plaintiffs' counsel responded with a letter the afternoon of Friday, July 08, 2011. Among other things, Plaintiffs' counsel requested detailed information supporting the motion, and indicated she would need to make a careful review of the information. Since the fee motion was due the next business day, on July 11, 2011, the parties agreed to stipulate to a two-week extension of time to bring the fee motion to allow time to continue to attempt to meet and confer. Before 9:00 a.m. on Monday, July 11, the Greene Defendants' counsel filed a Stipulation and Proposed Order to Extend the Time to File the Motion. However, because of the shortness of time, the Court had not yet ruled on the stipulated request for an extension and the Motion was filed at the end of the day on July 11, 2011. The Greene Defendants will continue to attempt to resolve any disputes in connection with the Motion even after the filing of the Motion. Declaration of Jerome B. Falk, Jr. ("Falk Decl.") ¶¶14-15.

## II. FACTUAL BACKGROUND.

### A. After Plaintiffs File Complaint, The Greene Defendants Retain The Howard Rice And Hinshaw Law Firms.

Plaintiffs filed their Complaint on October 27, 2010, at a time when Richard Greene, one of the Greene Defendants and a senior partner of the Greene Radovsky law firm, was out of the country. Two days later, the San Francisco Chronicle and other news outlets ran articles repeating and publicizing the allegations of the Complaint. Mr. Greene and his firm were extremely upset by the Complaint. They viewed the allegations as baseless and offensive and believed that the filing of the Complaint, and the publicity surrounding it, would damage their reputations even though they were confident they ultimately would be vindicated and would prove the allegations false. This concern was amplified by the additional risk of disciplinary proceedings, due to the self-reporting requirement under Business & Professions Code §6068(o)(2) if the plaintiffs prevailed in any of their fraud or misrepresentation claims. *See* Declaration of Ronald E. Mallen ("Mallen Decl.") ¶8.

The Greene firm's professional liability insurer selected Ronald Mallen and the Hinshaw firm to defend the action. Mallen Decl. ¶¶5-6. Mr. Mallen specializes in defending lawyers and law firms, and has written the leading treatise in the field. *Id.* ¶2. In addition, in light of the seriousness of the allegations and the publicity the action had generated (with severe potential reputational consequences), the Greene Defendants elected to retain Jerome Falk and his firm, Howard Rice Nemerovski Canady Falk & Rabkin, A Professional Corporation. Declaration of Jerome B. Falk, Jr. ("Falk Decl.") ¶¶3-4. Mr. Greene has known Mr. Falk for more than forty-five years and has personally retained him in the past, as well as causing him to be engaged to represent clients of the Greene firm in significant litigation matters. *Id.* One of those matters concerned the administration of Mr. Graham's estate: at Mr. Greene's recommendation, Mr. Graham's executor retained Mr. Falk in connection with a serious litigation matter concerning the estate. *Id.* ¶3. As a result, Mr. Falk already was familiar with the many aspects of the estate probate and administration. More information about the experience and qualifications of the defense attorneys is provided in the accompanying declarations. *See* Falk Decl. ¶¶2 & Ex. A; Mallen Decl. ¶2; Declaration of Cassidy E. Chivers ("Chivers Decl.") ¶3; Declaration of Jonathan W. Hughes ("Hughes Decl.") ¶2 & Ex. A.

**B.   Greene's Attorneys Conduct Preliminary Fact Investigation, Legal Analysis And Assessment.**

Immediately upon being retained, the Howard Rice and Hinshaw firms began coordinating their efforts to avoid any duplication or inefficiency in working together in defending the case. Mallen Decl. ¶¶5-8; Falk Decl. ¶¶6; Chivers Decl. ¶¶6-7. The attorneys undertook a division of labor to maximize cost efficiency. The Hinshaw firm took primary responsibility for document review and initial preparation of court pleadings. Howard Rice would provide strategic input on case strategy and would review and edit court pleadings initially prepared by the Hinshaw firm. Within the Hinshaw firm, Mr. Mallen was responsible for the overall handling of the defense, partner Cassidy Chivers was responsible for the day-to-day handling, including the factual investigation, and associate Christina Lee, was charged with the document review, factual background, and drafting legal memoranda. Within the Howard Rice firm, Mr. Falk had the overall responsibility for the case, and worked together with partner-level[2] attorney Jonathan Hughes, vice chair of the firm's Attorney Liability Practice Group. Defense counsel took care to avoid duplication and overlap of tasks, though the final drafting of the dispositive motions and reply briefs was shared after Hinshaw prepared the initial drafts. Chivers Decl. ¶¶8-16; Falk Decl. ¶¶6-10; Mallen Decl. ¶¶6-7.

The thirty-two page Complaint with more than 100 paragraphs raised numerous and complex factual questions that had to be investigated and addressed, as well multiple legal issues. Indeed, after reviewing Plaintiffs' Complaint, Hinshaw concluded that Plaintiffs' allegations arose out of at least two categories of protected activities and thus were potentially subject to the Anti-SLAPP statute. Chivers Decl. ¶¶7, 10, 12. Howard Rice and Hinshaw conferred and agreed that Hinshaw would undertake the initial factual and legal assessment and investigation in responding to Plaintiffs' Complaint. Chivers Decl. ¶¶7-8; Falk Decl. ¶¶6. Accordingly, Hinshaw undertook preliminary research and analysis of the multiple factual and legal issues raised by the Complaint, research of relevant supporting law regarding the anti-SLAPP motion to strike, and research of case

---

[2] Howard Rice is a professional corporation and its partner-level attorneys have the title of "directors."

1    law and statutory authority as it pertains to each claim asserted in the Complaint. Chivers Decl. ¶¶9-
2    16.

3    More specifically, a successful anti-SLAPP motion in this case essentially required counsel to
4    conduct activities comparable to preparation for a trial to ensure that all legal issues were addressed
5    and that any potential factual conflicts were either resolved or shown to be legally immaterial.
6    Plaintiffs' Complaint involved underlying estate planning activities, probate proceedings, and
7    multiple business transactions spanning at least twenty years. The scurrilous accusations of fraud
8    against prominent attorneys required very careful responses to defend the clients' reputations, and
9    the threat of disciplinary action under Business & Professions Code Section 6068(o)(2). Mallen
10   Decl. ¶8. Moreover, these accusations of fraud and deceit encompassed claims that the Greene
11   Defendants possessed certain knowledge of Bill Graham's personal and business property as
12   Mr. Graham's estate planning counsel and, following Mr. Graham's death, purportedly deceived
13   plaintiffs about the true nature and content of the estate property, during several years of probate
14   proceedings and related business transactions. Plaintiffs' Complaint also encompassed claims that
15   Mr. Graham owned certain intellectual property that was created during the forty years prior to his
16   death, requiring an investigation into the circumstances of creation and ownership of that intellectual
17   property. Consequently, the beginning point for the anti-SLAPP motion required the lawyers to
18   piece together a series of circumstances, activities, and transactions that began before Mr. Graham
19   died in 1991, and culminated with Plaintiff's alleged discovery of their purported "smoking gun"
20   document—the Assignment—in 2009. This investigation was an immense undertaking. Chivers
21   Decl. ¶10.

22   Hinshaw's first task was to review and analyze the Greene Defendants' files amassed
23   throughout the Greene Defendants' more than twenty year representation of Bill Graham, his
24   Companies, and his Estate. Those files consisted of approximately seventy-five boxes. Chivers
25   Decl. ¶11. Hinshaw conducted an in-depth review of the material, sifting through decades of files
26   for potentially relevant documents to support the anti-SLAPP Motion to Strike and to refresh
27   recollections of the clients other witnesses about nearly ancient events. *Id.*

28   After identifying and gathering potentially relevant documents, Hinshaw collated the

1  information to delineate the evidence under both prongs of the anti-SLAPP statute. Chivers Decl.
2  ¶¶12-14. The Greene Defendants' role as estate planning counsel and probate counsel encompassed
3  a diverse array of legal tasks, activities and advice on behalf of Mr. Graham, and also his various
4  companies, over many years.

5  With respect to the first prong of the anti-SLAPP statute requiring that the moving party
6  establish that the claims (1) allege protected activities and (2) arise from those protected activities,
7  Hinshaw needed to identify and analyze Plaintiffs' core grievance in the context of that vast
8  representation under relevant anti-SLAPP jurisprudence. This task was complicated by the
9  numerous factual inaccuracies and obfuscations contained in Plaintiffs' Complaint. Chivers Decl.
10 ¶12.

11 With respect to the second prong concerning whether plaintiffs could establish a probability of
12 prevailing on their claims of (1) Aiding and Abetting Breach of Fiduciary Duty (Second Cause of
13 Action), (2) Conspiracy/Aiding And Abetting Conversion (Fourth Cause of Action), (3) Deceit—
14 Intentional Misrepresentation (Fifth Cause of Action), (4) Deceit—Negligent Misrepresentation
15 (Sixth Cause of Action), and (5) Fraud/Concealment (Seventh Cause of Action), counsel was
16 required to research, analyze and draft arguments relating to the absolute affirmative defenses of
17 litigation privilege, agent's immunity rule, and statute of limitations, as well as each claim's lack of
18 substantive merit. In particular, the statute of limitations argument required significant factual
19 analysis concerning level of knowledge possessed by Plaintiffs and/or their representatives of key
20 facts during underlying proceedings and transactions that occurred approximately twenty years ago.
21 This task was complicated by fading memories of certain individuals. Chivers Decl. ¶13.

22 **C.  The Greene Defendants' Anti-SLAPP Motion To Strike.**

23 After the initial assessment and investigation of Plaintiffs' Complaint and researching the
24 applicable law surrounding Plaintiffs' 100-plus paragraphs of allegations, Hinshaw prepared an
25 initial draft of an anti-SLAPP Motion to Strike pursuant to §425.16. Chivers Decl. ¶14; Mallen
26 Decl. ¶¶6-7. In support of the motion, Hinshaw prepared a Memorandum of Points and Authorities,
27 a substantial Request for Judicial Notice of Documents, and Proposed Order. Additionally,
28 Hinshaw prepared several critical declarations, including the Declaration of Ms. McCall and the

1  detailed evidentiary Declaration of Mr. Greene with multiple supporting exhibits, to refute the
2  allegations contained in Plaintiffs' Complaint.  Hinshaw also prepared a motion to dismiss Plaintiffs
3  Complaint, as an alternative to the anti-SLAPP motion and as a precaution in the event the Court
4  concluded that the Complaint did not arise out of protected activity.  Hinshaw also reviewed for
5  potential evidentiary support the Motion to Dismiss filed by the Sagan et al. Defendants.  Chivers
6  Decl. ¶14.

7  After Hinshaw comprehensive working drafts of the motions and supporting evidentiary
8  documents, they were transmitted to the Howard Rice firm and Mr. Greene, all of whom commented
9  on the drafts.  Howard Rice generated revised drafts of the motion papers.  Thereafter, the two firms
10 worked collaboratively to revise the documents for filing.  Chivers Decl. ¶15; Mallen Decl. ¶¶6-7.

### D. The Greene Defendants' Reply To Plaintiffs' Oppositions.

In response to the Greene Defendants' anti-SLAPP motion and motion to dismiss, Plaintiffs filed a twenty-seven page Opposition, eight declarations, and nearly 500 pages of exhibits.  ECF Nos. 45-47, 47-1, 47-2, 47-3, 47-4, 47-5, 48-49, 49-1, 49-2, 50-53.  After receiving and reviewing Plaintiffs' oppositions, Hinshaw, Howard Rice, and the Greene Defendants met again to determine the most efficient and cost-effective way to prepare the response.  Chivers Decl. ¶¶18-23; Mallen Decl. ¶¶6-7.  Again, Hinshaw prepared the initial draft reply papers, after appropriate legal research to respond to issues raised in Plaintiffs' Opposition.  Chivers Decl. ¶¶20-22.  Hinshaw also continued the detailed review and analysis of the Greene Defendants' files to identify additional documents to support the defense.  Chivers Decl. ¶22.  Having identified additional supportive documents, Hinshaw prepared a supplemental declaration for Mr. Greene.  *Id.*  Hinshaw also prepared objections to inadmissible evidence submitted in support of Plaintiffs' Oppositions.  *Id.*

After the initial draft reply briefing and supporting documents were prepared, Hinshaw and Howard Rice again worked collaboratively to revise and prepare the final documents for filing. Chivers Decl. ¶21.

### E. Hearing And Post-Hearing Activities.

Just prior to the hearing, Plaintiffs' counsel filed objections to the Greene firm's supplemental evidence and Notice of New Case, both of which required analysis and a response.  Chivers Decl.

1  ¶24.  During the hearing,[3] the issue arose whether Plaintiffs would be allowed to amend their
2  Complaint if the Greene Defendants' anti-SLAPP Motion was granted.  *Cf.* Letter from Jerome Falk
3  to The Honorable Claudia Wilken, ECF No. 78.  Hinshaw and Howard Rice conducted research to
4  provide the Court with a supplemental briefing on that issue, and submitted it to the Court for its
5  consideration. Chivers Decl. ¶26; Falk Decl. ¶8.

6  After the hearing, Hinshaw and Howard Rice spent the time necessary to respond to the
7  various filings by Plaintiffs and co-Defendants in connection with Plaintiffs' attempt to submit late
8  evidence. Chivers Decl. ¶26; Falk Decl. ¶9.

## III. THE GREENE DEFENDANTS ARE ENTITLED TO ATTORNEYS FEES AND COSTS.

A fee award granted pursuant to Code of Civil Procedure Section 425.16(c) should include compensation for *all* hours that are reasonably spent on the Motion, including fees relating to the fee motion.  *Premier Med. Mgmt. Sys., Inc. v. California Ins. Guar. Ass'n*, 163 Cal. App. 4th 550, 556 (2008) (affirming as reasonable an award of $274,500 in attorneys' fees for a joint defense effort, and rejected arguments that the fees were duplicative).  "[E]ach fee application under section 425.16, subdivision (c) must be assessed on its own merits . . . taking into account what is reasonable under the circumstances." *Id.* at 561.

> The matter of reasonableness of attorney's fees is within the sound discretion of the trial judge. Determining the weight and credibility of the evidence, especially credibility of witnesses, is the special province of the trier of fact.  In determining what constitutes a reasonable compensation for an attorney who has rendered services in connection with a legal proceeding, the court may and should consider the nature of the litigation, its difficulty, the amount involved, the skill required and the skill employed in handling the litigation, the attention given, the success of the attorney's efforts, his learning, his age, and his experience in the particular type of work demanded . . . ; the intricacies and importance of the litigation, the labor and necessity for skilled legal training and ability in trying the cause, and the time consumed. *(Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 658-59 (1996), *disapproved on other grounds by Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 68 n.5 (2002) (emphasis, internal quotation marks and citations omitted) (citing *Stokus v. Marsh*, 217 Cal. App. 3d 647, 656-57 (1990)))

---

[3] The Greene firm is seeking only the cost of Mr. Mallen's and Mr. Falk's attendance at the April 7, 2011 hearing. Chivers Decl. ¶25.

**IV. THE AMOUNT OF ATTORNEYS THE GREENE DEFENDANTS ARE SEEKING IS REASONABLE.**

From the filing of the Complaint, until the submission of the last post-hearing brief on April 22, 2011, the Greene Defendants incurred approximately $249,000 in attorneys fees in connection with the anti-SLAPP motion. Of that amount, the Greene Defendants do not seek in this motion to recover fees for activities related to certain legal assistant time relating to registering for e-filing, and are not seeking to recover attorneys fees for attorneys who attended the hearing on the anti-SLAPP motion, other than for Messrs. Falk and Mallen. Eliminating these items reduces the fees to $240,506.50. Chivers Decl. ¶24 & Ex. A; Falk Decl. ¶12[4]

In addition to those attorneys fees, the Greene Defendants seek their fees incurred in connection with their request for fees. The Court issued its ruling on June 24, 2011. From that date until the time of the hearing on this fee motion, the Greene Defendants have and will incur additional recoverable attorneys fees. The Greene Defendants' attorneys will submit additional declarations at the time of the hearing detailing the fees the Greene Defendants will have incurred and are estimated to incur in seeking their attorneys fees.

As explained in more detail below, the hourly rates charged by the attorneys are reasonable, the amount of time the attorneys spent on the motion was reasonable, and the overall amount of the fees on the motion is reasonable

**A.  The Hourly Rates Charged By The Hinshaw And Howard Rice Firms Are Reasonable.**

The Greene firm had written fee agreements with both the Hinshaw firm and the Howard Rice firm, which provided that the firms would bill the Greene firm on an hourly rate basis. The Howard Rice firm billed the time of its professionals at their standard hourly rates, which are at market rates.

---

[4]The Greene Defendants do seek their fees for the time spent on their motion to dismiss, which was related to and filed together with the anti-SLAPP motion. Those fees are recoverable as having been incurred in connection with the anti-SLAPP motion. *Kearney v. Foley and* Lardner, 553 F. Supp. 2d 1178, 1183-84 (S.D. Cal. 2008). However, to the extent the Court determines that fees incurred in connection with the motion to dismiss are not recoverable, the Greene Defendants estimate that the fees they incurred in connection with that motion were approximately $15,000. Hughes Decl. ¶4.

1  Falk Decl. ¶11.  Based on a contract between the Hinshaw firm and the Greene firm's professional
2  liability insurer, the Hinshaw firm charged contract rates, which are below market rates.  Chivers
3  Decl ¶4.  The Greene firm and its insurer, respectively, have paid the law firms' statements issued to
4  date.  Falk Decl. ¶13; Mallen Decl. ¶9.

**B.     The Amount Of Time Spent By The Lawyers Was Reasonable.**

The Greene Defendants' attorneys' declarations establish the time expended and the amounts claimed, which were paid by the clients, are a *prima facie* case or lodestar of reasonable fees. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1140-1141 (2001); *Wollersheim*, 42 Cal. App. 4th at 658-59; *see also Martino v. Denevi*, 182 Cal. App. 3d 553, 559 (1959) (stating that detailed testimony specifying the legal services provided is sufficient to defeat a challenge that the amount of attorney fees is unreasonable); *Kershaw v. Maryland Cas. Co.*, 172 Cal. App. 2d 248 (1959) ("When it does not appear that the attorneys' fees and other expenses are obviously excessive, testimony of the amounts paid will constitute a prima facie case; and it will be assumed in such case that the attorneys' fees so paid were reasonable, unless the contrary appears") (internal citations omitted). Attached as Exhibit A to the Chivers Declaration is a chart which sets forth the number of hours and the amounts billed for each stage of work by each firm:  (a) the initial fact investigation, legal analysis and preliminary assessment; (2) the preparation of the moving and reply papers and the preparation for and attendance at the hearing; (3) the post-hearing briefing; and (4) the work on this fee request.  Chivers Decl. ¶24 & Ex. A.

As previously noted (*see* p.4, *supra*), preparing the anti-SLAPP motion is comparable to preparing a case for trial that involved complex issues, and many documents, complicated by the fact that the alleged events occurred fifteen to twenty years ago.  Chivers Decl. ¶10.  Defending against this SLAPP action required detailed review and analysis of the Greene Defendants' voluminous file amassed throughout more than two-decades of their representation of Bill Graham, his Companies, and his Estate.  *Id.*

To competently defend against the SLAPP action, the Greene Defendants' attorneys applied their expertise in the area of legal malpractice defense.  Chivers Decl. ¶¶4-6; Falk Decl. ¶2 & Ex. A; Hughes Decl. ¶2 & Ex. A; Mallen Decl. ¶¶2-3.  Their skill and experience calls for a higher

1  customary hourly charge. Moreover, recognizing the need to handle the matter efficiently and
2  economically and to prevent unnecessary overlap, Hinshaw and Howard Rice began each stage of
3  the matter with coordination to assign tasks and avoid duplication. Chivers Decl. ¶¶8, 20-21. This
4  was not done in contemplation of this fee application; success of the anti-SLAPP motion was no
5  guarantee. Rather, the lawyers performed their services under the assumption that their clients
6  would be billed for them, which needed to be efficient and reasonable. Except for some unbilled
7  time, all fees and costs were billed and paid, which is *prima facie* evidence of reasonableness.

8  This pre-planning resulted in a streamlined, efficient process that minimized overlap, if any.
9  Chivers Decl. ¶¶7-26. For example, the bulk of time was billed for drafting the motions and replies,
10 where there was a clear division of labor. *See* pp. 3-7, *supra*; Chivers Decl. ¶¶7-16 (motions); *id*.
11 ¶18-23 (replies); Falk Decl. ¶¶6-10. Hinshaw prepared the initial drafts, Howard Rice revised them,
12 and then the two firms worked collaboratively to finalize and prepare the documents for filing.
13 Chivers Decl. ¶¶14-15, 20-21. As Mr. Falk explains in his declaration, the result was that the total
14 amount of time expended by counsel was no greater than it would have been if the collaborating
15 lawyers had been in a single firm. Falk Decl. ¶10. Thus, because of the lower rates contractual rates
16 the Hinshaw firm charged, the overall amount of the fees was lower than would have been the case
17 had the Howard Rice firm handled the entire matter. Nevertheless, as previously explained, the fee
18 request has been reduced by an across-the-board ten percent to eliminate any possible question of
19 duplication or inefficiency.

20 The complexity of the case, the enormity of the facts and legal issues, is underscored by the
21 Plaintiffs' opposition, which, in addition to the extensive legal brief, included eight declarations and
22 nearly 500 pages of exhibits. It was Plaintiffs' factually and legally unsubstantiated claims that
23 required the Greene Defendants not only to defend themselves from significant financial liability
24 but, perhaps more importantly, preserve the Greene Defendants' outstanding reputations for quality
25 lawyering and integrity that Plaintiffs' lawsuit threatened.

26 **C.     The Overall Amount Of The Attorneys Fees Sought Is Reasonable.**

27 The overall amount of the fees sought are reasonable. The Complaint alleges wrongdoing
28 which suggested damages claims in the many millions of dollars. Perhaps even more significantly,

1 the despicable allegations in the Complaint themselves were damaging to Defendants' reputations
2 and it was perfectly reasonable for Defendants to mount a vigorous defense with a high quality
3 defense team. As shown above, the rates and amount of time the attorneys spent were reasonable.
4 Moreover, the overall amount of fees is well within the range of fees that have been approved by
5 courts as reasonable on an anti-SLAPP motion. *See, e.g.*, *Metabolife Int'l, Inc. v. Wornick*, 213 F.
6 Supp. 2d 1220, 1221, 1228 (S.D. Cal. 2002) (awarding attorneys fees in the amount of $318,687.99
7 to prevailing party on anti-SLAPP motion).

**V.   CONCLUSION.**

In sum, the Greene Defendants incurred $240,506.50 in recoverable fees to respond to Plaintiffs' filing of the SLAPP action. The Greene Defendants estimate that they will incur an additional $20,000 in fees in preparing for and arguing this motion, the specific amount will be set forth in declarations provided at the time of the hearing. All of the foregoing fees were reasonably

incurred in the defense against Plaintiffs' SLAPP action in conjunction with the filing of the Special Motion to Strike.[5] Chivers Decl. ¶¶16-17, 23-27. The court should award the fees.

DATED: July 11, 2011.

        Respectfully,

RONALD E. MALLEN
CASSIDY E. CHIVERS
CHRISTINA A. LEE
HINSHAW & CULBERTSON LLP

JEROME B. FALK, JR.
JONATHAN W. HUGHES
HOWARD RICE NEMEROVSKI CANADY
    FALK & RABKIN
A Professional Corporation

By:    */s/ Jerome B. Falk, Jr.*
        JEROME B. FALK, JR.

Attorneys for Defendants RICHARD L. GREENE, LINDA McCALL, GREENE RADOVSKY MALONEY SHARE & HENNIGH LLP

W03 071111-102600004/U07/1652655/F

---

[5] The Greene Defendants have separately submitted a Bill of Costs pursuant to Civil L.R. 54-1.