1  RONALD E. MALLEN (No. 40928)
   rmallen@hinshawlaw.com
2  CASSIDY E. CHIVERS (No. 203043)
   cchivers@hinshawlaw.com
3  CHRISTINA A. LEE (No. 257905)
   clee@hinshawlaw.com
4  HINSHAW & CULBERTSON LLP
   One California Street, 18th Floor
5  San Francisco, CA  94111
   Telephone:    415/362-6000
6  Facsimile:    415/834-9070

7  JEROME B. FALK, JR. (No. 39087)
   jfalk@howardrice.com
8  JONATHAN W. HUGHES (No. 186829)
   jhughes@howardrice.com
9  HOWARD RICE NEMEROVSKI CANADY
        FALK & RABKIN
10 A Professional Corporation
   Three Embarcadero Center, 7th Floor
11 San Francisco, California  94111-4024
   Telephone:    415/434-1600
12 Facsimile:    415/677-6262

13 Attorneys for Defendants
   RICHARD L. GREENE, LINDA McCALL,
14 GREENE RADOVSKY MALONEY SHARE &
   HENNIGH LLP, a limited liability partnership

15                    UNITED STATES DISTRICT COURT

16                   NORTHERN DISTRICT OF CALIFORNIA

17                          OAKLAND DIVISION

18

19 ALEXANDER GRAHAM-SULT, an individual,    No. CV 10-4877 CW
   and DAVID GRAHAM, an individual,
20                                          Action Filed: October 27, 2010
                    Plaintiffs,
21                                          DECLARATION OF CASSIDY E.
        v.                                  CHIVERS IN SUPPORT OF MOTION
22                                          FOR ATTORNEYS FEES
   NICHOLAS P. CLAINOS, an individual,
23 RICHARD L. GREENE, an individual, LINDA  Date:    Thursday, September 22, 2011
   McCALL, an individual, GREENE RADOVSKY   Time:    2:00 p.m.
24 MALONEY SHARE & HENNIGH LLP, a           Place:   2, 4th Floor
   limited liability partnership, BILL GRAHAM   Judge:   Hon. Claudia Wilken
25 ARCHIVES LLC, d/b/a WOLFGANG'S
   VAULT, a limited liability company, NORTON
26 LLC, a limited liability company, and WILLIAM
   E. SAGAN, an individual,
27
                    Defendants.
28

**HowardRice**

1    I, Cassidy E. Chivers, declare:

2        1.      I am an attorney licensed to practice law in the State of California and a partner in the

3    law firm of Hinshaw & Culbertson, LLP, attorneys of record for defendants Richard L. Greene,

4    Linda McCall, and Greene Radovsky Maloney Share & Hennigh LLP (collectively, "the Greene

5    defendants"). I have personal knowledge of the facts in this Declaration and if called upon could

6    and would testify thereto.

7        2.      I was one of the lawyers at my office that provided legal services to the Greene

8    defendants on this matter. The other lawyers from my office are Ronald E. Mallen, the supervising

9    partner, and associate Christina A. Lee. My role with respect to the Anti-SLAPP motion was

10   principally threefold (1) direct supervision of Ms. Lee; (2) preparing the initial and follow-up

11   revisions of the supporting briefs and evidentiary documents; and (3) coordinating the efforts

12   between our office and co-counsel, Jonathon W. Hughes and Jerome B. Falk, Jr. at Howard, Rice,

13   Nemerovski, Canady, Falk & Rabkin, APC ("Howard Rice").

14       3.      I have extensive experience representing professionals, including attorneys, against

15   malpractice claims. I have been practicing law for more than 12 years. I have presented on the

16   subject of Special Motions to Strike under California's Anti-SLAPP Statute. I have also drafted

17   numerous successful Anti-SLAPP Motions to Strike. My customary hourly rate for noninsurance

18   matters is $325.

19       4.      Because of our contractual arrangement with the Greene firm's insurer, my hourly

20   rate for this matter is $250 per hour. Mr. Mallen's hourly rate for this matter is $325 per hour. Ms.

21   Lee's hourly rate for this matter is $195 per hour. These rates are well below the firm's ordinary

22   commercial rates for partners and associates.

23       5.      I have reviewed all of the time entries for legal services billed to our clients arising

24   from this lawsuit. We maintain time records through a computer timekeeping system, Carpe

25   Diem®. This system indicates that from November 2010 through April 2011 I billed a total of

26   234.3 hours to this matter for total fees of $58,575. Mr. Mallen billed a total of 110.1 hours to this

27   matter for total fees of $35,782.50. Ms. Lee billed a total of 208.6 hours to this matter for total fees

28   of $40,677. Following my review of the time entries and invoices, I have determined that the

C. CHIVERS DECL. ISO GREENE DEFENDANTS' MOTION FOR ATTORNEYS FEES—CV 10-4877 CW

1   Greene defendants have incurred $131,750.60 in attorneys fees by our law firm and costs for

2   responding to plaintiffs' unmeritorious complaint and various motions and applications related to

3   the Greene defendants' Anti-SLAPP motion.  Following is a description of the services that were

4   provided and the time and costs that our clients incurred.

5           6.      Our office was retained by the Greene defendants and their professional liability

6   insurer.  We received a copy of the plaintiffs' complaint on or about November 3, 2010.  Our initial

7   analysis was that plaintiffs' allegations arose out of at least two categories of protected speech and

8   therefore were potentially subject to the anti-SLAPP statute.  (*See* C.C.P. § 425.16(e)(1) - (2).)  Ms.

9   Lee was assigned as the associate on the file.  At that point, the Greene defendants had also retained

10  Mr. Falk at Howard Rice to also represent them because of Mr. Falk's long-standing relationship

11  with the Greene defendants, and knowledge of the firm's history and practices.  (*See* the

12  Declarations of Ronald E. Mallen and Jerome B. Falk, Jr. for more detail concerning this

13  arrangement).  Accordingly, our first task was to meet with our clients and the Howard Rice lawyers

14  to discuss overall strategy and the division of labor between the two firms.  Internally, we also

15  discussed the division of labor between Mr. Mallen, Ms. Lee, and myself.

16          7.      At an initial meeting with our clients, we determined that our firm would principally

17  handle review and analysis of the Greene defendants' files and the legal research and analysis,

18  complete the initial drafts of the relevant briefs and related documents, and file the pleadings.  The

19  Howard Rice firm would be responsible for inputting its background knowledge of the Greene firm,

20  reviewing and revising the motions briefs and related documents, and assisting with overall strategy

21  and analysis.

22          8.      Internally, Ms. Lee was assigned the tasks of reviewing the files and performing

23  other factual investigatory tasks; the initial analysis of identifying key documents; performing

24  directed legal research; and drafting memoranda and some supporting documents such as requests

25  for judicial notice and some declarations, as necessary; and editing and cite-checking final versions

26  of the briefs.  I was charged with direct supervision of Ms. Lee; primary analysis of the relevant

27  documents; communications and strategic discussions with co-defense counsel at Cooper White &

28  Cooper, who represented co-defendant Nicolas Clainos and possessed certain vital information

1   concerning Mr. Clainos's recollection of the underlying transactions and dealings; legal research and

2   analysis; drafting the briefs and most of the supporting documents or revising those documents

3   prepared by Ms. Lee; coordinating rounds of revisions with the Howard Rice lawyers; and final

4   editing and finalizing the pleadings for filing.  Mr. Mallen was responsible for overall legal strategy

5   and analysis; providing guidance based on his extensive knowledge and experience of the law in the

6   area of anti-SLAPP jurisprudence and claims against lawyers in general; client communications

7   concerning strategy; and revisions to the briefs and advising Mr. Falk with respect to the hearing

8   based on Mr. Mallen's expertise in this area of the law.  (*See* Declaration of Ronald E. Mallen).

9       9.     This case was unusual in our experience because, a successful anti-SLAPP motion in

10  this case essentially required a trial of plaintiffs' complaint, which involved underlying estate

11  planning activities, probate proceedings, and multiple business transactions spanning at least 20

12  years.  The seriousness went beyond technically addressing the Complaint because the scurrilous

13  accusations against prominent attorneys of fraud required very careful responses to defend our

14  clients' reputations.  The accusations of fraud and deceit against the Greene defendants

15  encompassed claims that the Greene defendants possessed certain knowledge of Bill Graham's

16  personal and business property as Mr. Graham's estate planning counsel, and following Mr.

17  Graham's death, purportedly deceived plaintiffs about the true nature and content of the estate

18  property, during several years of probate proceedings and related business transactions.  Plaintiffs'

19  complaint also encompassed claims that Mr. Graham owned certain intellectual property that was

20  created during the 40 years prior to his death, requiring an investigation into the circumstances of

21  creation and ownership of that intellectual property.  Thus, the beginning point for the anti-SLAPP

22  motion required the lawyers to piece together a series of circumstances, activities, and transactions

23  that began before Mr. Graham died in 1991, and culminated with plaintiffs' alleged discovery of

24  their purported "smoking gun" document — the Assignment — in 2009.  This investigation was an

25  immense undertaking.

26      10.    As Ms. Lee's direct supervisor, I have knowledge of the tasks that she performed.  I

27  have also spoken to her about her work on this matter.  As stated, Ms. Lee was charged with the

28  initial task of reviewing the Greene defendants' files concerning their role as estate planning counsel

C. CHIVERS DECL. ISO GREENE DEFENDANTS' MOTION FOR ATTORNEYS FEES—CV 10-4877 CW

1    for Graham, and probate counsel for Mr. Clainos.  The files consisted of approximately 75 boxes of

2    documents.  Once Ms. Lee completed this task and reduced the potentially relevant documents to

3    approximately three (3) boxes of documents, I performed my review and analysis of those

4    documents.  This investigation continued through the drafting and revision process of the anti-

5    SLAPP motion because it served as the critical foundation for our factual response to plaintiffs'

6    SLAPP suit.

7          11.      The legal issues raised in plaintiffs' complaint and those that were to be addressed

8    under the anti-SLAPP law were numerous and complex.  Plaintiffs placed in issue the Greene

9    defendants' role as estate planning counsel and probate counsel.  Not only did this encompass a

10   diverse array of legal tasks, activities, and advice, and span years, but the allegations also involved

11   the many years of representation of Bill Graham and his business enterprises.  With respect to the

12   first prong of the Anti-SLAPP statute requiring that the moving party establish that the claims (1)

13   allege protected activities and (2) arise from those protected activities, we were required to analyze

14   and identify plaintiffs' core grievance in the context of that vast representation under relevant anti-

15   SLAPP jurisprudence.  This task was complicated by the numerous factual inaccuracies and

16   obfuscations contained in plaintiffs' complaint.

17         12.      With respect to the second prong concerning whether plaintiffs can establish a

18   probability of prevailing on their claims of (1) Aiding and Abetting Breach of Fiduciary Duty

19   (Second Cause of Action), (2) Conspiracy/Aiding And Abetting Conversion  (Fourth Cause of

20   Action), (3) Deceit—Intentional Misrepresentation (Fifth Cause of Action), (4) Deceit—Negligent

21   Misrepresentation (Sixth Cause of Action), and (5) Fraud/Concealment (Seventh Cause of Action),

22   we were required to research, analyze, and draft arguments relating to the absolute affirmative

23   defenses of litigation privilege, agent's immunity rule, and statute of limitations, as well as each

24   claim's lack of substantive merit.  In particular, the statute of limitations argument required

25   significant factual analysis concerning level of knowledge possessed by plaintiffs and/or their

26   representatives of key facts during underlying proceedings and transactions that occurred

27   approximately 20 years ago.  Obviously, this task was complicated by fading memories of key

28   individuals.

13.     We reviewed thousands of documents, had ongoing consultations with our clients, and created meaningful chronologies and narrative summaries of events.  Although we had extensive experience with anti-SLAPP motions, we needed to refine our analysis with additional case law, and in particular we needed to address the factual and legal merits of multiple causes of action.  The services performed in preparing the motion included the following:

a.     I principally drafted the initial points and authorities in support of the brief.  Ms. Lee prepared the initial factual background, which I revised.  Mr. Mallen then undertook revisions and additions to the moving papers, including the relevant case law.

b.     Ms. Lee also prepared the Request for Judicial Notice, and compiled the supporting documentation.  Ms. Lee also prepared the initial drafts of the supporting declarations, which I revised.  To that end, Ms. Lee and I worked closely with our various clients  in preparing and revising their declarations.

c.     I also reviewed and analyzed the Motion to Dismiss filed by co-defendant Sagan et al. before our motion deadline, to determine if any of the evidence submitted in support of that Motion would likewise support our Motion.  Indeed, we referenced the Katherine York declaration in support of our statute of limitations argument.

14.     After the first draft of the brief was prepared, the Howard Rice lawyers performed a round of revisions and edits to the brief and declarations.  I then further revised the brief and declarations, following strategic discussions with the Howard Rice lawyers.  Following another round of revisions by the Howard Rice lawyers and Mr. Mallen, and review by our clients, Ms. Lee and I finalized the briefs and supporting documents for filing.

15.     After completion of the Anti-SLAPP motion, we spent time communicating with counsel and the Court concerning the setting of a hearing date, as well as requests from plaintiffs' counsel to extend the deadline to file their opposition papers.

16.     We received plaintiffs' opposition papers on or about March 8, 2011.  Plaintiffs' opposition papers consisted of a 19-page memorandum of points and authorities, and voluminous supporting evidence, including multiple, lengthy declarations and exhibits (seven declarations and 25 exhibits; the Nimmer declaration alone contains 118 paragraphs; and the Handelman declaration

1   and its exhibits stands nearly 2 inches tall).  Plaintiffs cited and discussed 40 cases and two

2   California Probate Code Sections in their brief.

3       17.     Plaintiffs also filed opposition briefs to co-defendants Clainos and Sagan et al.'s

4   motions, which required review and analysis in connection with our reply brief.

5       18.     As with the initial motion, in preparing the reply we followed similar procedures,

6   including the divisions of labor within our firm and with the Howard Rice firm.

7       19.     As with the moving papers, I was principally tasked with drafting the reply brief, and

8   supervising Ms. Lee.  Mr. Mallen was responsible for overall strategy and legal analysis from his

9   expert perspective.  The Howard Rice lawyers were responsible for revisions and strategy from the

10  clients' point of view.

11      20.     The task of drafting the reply brief required review and analysis of the 40 cases cited

12  by plaintiffs, the voluminous declarations, objections to evidence, and composing the brief. Ms. Lee

13  undertook the task of preparing the initial draft of the objections to evidence and performing focused

14  legal research assignments.  In drafting the brief, we were required, for example, to address

15  plaintiffs' misconstruction of protected legal activities as non-litigation business dealings.  Again,

16  this required further review and analysis of our clients' files and required, in part, a supplemental

17  declaration from Mr. Greene and supplemental Request for Judicial Notice.

18      21.     We filed the reply papers on or about March 25, 2011.  The hearing on the motions

19  was set for April 7, 2011.  In the interim, we assisted with preparation for the oral argument, which

20  was to be principally handled by Mr. Falk.  In addition, plaintiffs submitted objections to our

21  supplemental evidence, and a "notice of new case," both of which required review and analysis prior

22  to the hearing.  I was initially responsible for both of these particular tasks.

23      22.     Although there were multiple lawyers from both offices present at the Court hearing

24  on April 7, 2011, the Greene defendants are seeking only the cost of Mr. Mallen and Mr. Falk's

25  attendance.

26      23.     Post-hearing briefs were required regarding plaintiffs' entitlement to amend the

27  complaint and submit additional evidence.  The Greene defendants filed a letter with leave to court

28  on the issue of plaintiffs' entitlement to amend the complaint.  Plaintiffs filed an administrative

1    motion for leave to file additional evidence.  Both of these post-hearing briefs required analysis and

2    response.  .

3          24.     Attached hereto as Exhibit A is a Table containing tasks, broken into five categories,

4    hours spent by each attorney, and total fees per category, representing the services provided by the

5    Hinshaw and Howard Rice firms in connection with the anti-SLAPP motion.  The total fees billed to

6    our clients, which have been paid or in the process of payment, are $240,506.50.

7          25.     I anticipate that  the Greene defendants will incur additional attorneys fees of

8    approximately $20,000 in preparing and arguing this motion

9          I declare under penalty of perjury under the laws of the State of California that the foregoing

10   is true and correct and that this Declaration was executed this 11th day of July in San Francisco,

11   California.

12                                                    _____/s/ Cassidy E. Chivers_____
                                                          CASSIDY E. CHIVERS
13